**UNITED STATES v. DRIED FRUIT ASS'N OF CALIFORNIA.**

No. 27258–G.

District Court, N. D. California.

May 17, 1944.

Tom C. Clark, Asst. Atty. Gen., Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., and James McI. Henderson, Frank Loughran, Don H. Banks, Stephen D. Maffini, and Lawrence W. Somerville, Sp. Assts. to the Atty. Gen., all of San Francisco, Cal., for plaintiff.

Maurice E. Harrison and Brobeck, Phleger & Harrison, all of San Francisco, Cal., for defendants Dried Fruit Ass'n of California and others.

Maurice E. Harrison, Brobeck, Phleger, & Harrison, Pillsbury, Madison & Sutro, and Marshall P. Madison, all of San Francisco, Cal., for defendants H. G. Richard and another.

Hagar, Crosby & Crosby, of Oakland, Cal., for defendant California Prune & Apricot Growers Ass'n.

Maurice E. Harrison, Brobeck, Phleger & Harrison, and William A. Boekel, all of San Francisco, Cal., for defendant Richmond-Chase Co.

Brobeck, Phleger & Harrison and Heller, Ehrman, White & McAuliffe, all of San Francisco, Cal., for defendant Guggenhime & Co.

Norman A. Eisner, of San Francisco, Cal., for defendants Consolidated Packing Co. and others.

Pillsbury, Madison & Sutro and Marshall P. Madison, all of San Francisco, Cal., for defendants California Packing Corporation and another.

## Charge to the Jury.

GOODMAN, District Judge.

Ladies and gentlemen, you have listened with commendable patience to all the evidence that has been adduced in this case, and also to the arguments by the attorneys. I am going to ask you now to give your attention to the instructions concerning the law which I will now give you. Let me say to you, first of all, that you have not been spectators here witnessing the series of events that have passed before your eyes during the past several weeks. You are, as far as this case is concerned, a part of the administration of justice in the federal courts. Your function here is as integrally a part of the administration of justice as is the part that is played by the judge, by the court officials, or by the attorneys or the parties.

A high tradition has always attended the administration of justice in the United States Courts, and you should, in approaching your duties, have in your hearts a zeal to see to it that justice is done, exact and impartial justice between the parties.

Let me say to you that you should not bring to the consideration of this case any preconceived notions on political or economic or social theories. We sometimes hear people say that they believe that so and so is guilty, or not guilty, of some charge on general principles. That would not be proper for you to do in this case, and you would be false to the oath which you have taken if you have any such preconceived ideas and you let them enter into your consideration of this case.

Whether you like or dislike the Sherman Anti-Trust Law is beside the question. Whether you like or dislike large corporations, or co-operative organizations is again beside the question, and whether you like or dislike the manner or the form or the character of the business enterprises of the defendants is also beside the question. If you let any of those considerations enter into your discussions, or into the conclusion which you may come to in this case, you will have departed from the real purpose which you have to serve as jurors in this case.

Upon the conclusion of the evidence the Court dismissed the indictment as against Dried Fruit Distributors of California, Inc., and this corporation is no longer a defendant in the case. The Court also granted a motion for a directed verdict of acquittal as to the defendants Harter Packing Co. and Liberty Dried Fruit Packing Corporation.

Accordingly, you are directed to return a verdict of acquittal as to the two defendants last named.

You are not to infer by reason of the fact that the Court has directed a verdict of acquittal in favor of the two last named defendants, that the Court has any opinion as to the guilt or innocence of the other defendants.

That you are to render a verdict of acquittal at the direction of the Court in favor of the two defendants named is not to be taken into account by you in considering the guilt or innocence of the remaining defendants. As I will hereafter point out, the guilt or innocence of the remaining defendants is to be determined by you solely upon the evidence.

I first would like to call to your attention, ladies and gentlemen, some of the general principles and rules of the law that apply to all trials in the Federal court, wherein persons are charged with crimes. First of all, it is your exclusive province to judge the facts. It is the exclusive function of the Court to instruct you as to the applicable law which in turn you will apply to the facts. The Court expresses no opinion on the facts of the case, or as to the evidence, nor do I wish you to understand or conclude from anything that I may have said during the trial, or in the course of these instructions at any time that I have intended, directly or indirectly, to indicate any opinion on my part as to the facts, or as to what I think your findings should be. From time to time during the course of the trial the Court asked questions of the witnesses and made comments as to the law in ruling upon objections and motions made by counsel for both sides. You are not to infer from the questions asked by the Court, or such comments that I may have made, that the court was thereby indicating any opinion as to the evidence, or as to what your findings should be. Those questions were asked, and the comments made in the exercise of the Court's inherent power, and, indeed, its duty to supervise the trial of the case.

In your deliberations you are to wholly exclude any sympathy or any prejudice from your minds. You must keep in mind, and I believe the Court so told you at the time you were impaneled as jurors, that no presumption whatsoever arises because the grand jury has indicted the defendants that the defendants, or any of them, are guilty. At all stages of this proceeding the defendants, and all of them, are presumed to be innocent. This presumption continues until the evidence introduced for or on behalf of the Government proves them guilty, or the guilt of any one of them beyond a reasonable doubt. The burden of convincing you beyond a reasonable doubt of the guilt of the defendants rests upon the Government.

Now, I have mentioned the question of reasonable doubt, and it is proper that you should know what that means. Very simply stated, a reasonable doubt is such a doubt as you may have in your minds when after fully and impartially considering all of the evidence that has been introduced you do not feel satisfied to a moral certainty of the guilt of the defendants, or any of them. Of course, there is almost always difficulty in proving a fact to an absolute certainty, a complete certainty. Therefore, you should keep in mind a reasonable doubt is not a mere possible or imaginary doubt, or a mere conjecture. The rule of reasonable doubt applies to every material element of the offense charged.

Whether you believe or you do not believe the witnesses who have testified in this case, and the weight to be attached to their testimony respectively, is a matter for your sole and exclusive judgment. We also have this rule: that a witness is presumed to speak the truth, but this presumption may be negatived by the manner in which he testifies, by the character of his testimony, by contradictory evidence, by his motives, or by evidence as to his character and reputation for truth, honesty and integrity. No evidence as to the truth, honesty and integrity of any of the witnesses was offered which contravenes the truth, honesty or integrity of any of the witnesses here. So in coming to a conclusion you need not give your attention to that.

In passing upon the credibility of the various witnesses, it is your right to accept the whole or any part of their testimony, or to discard and reject the whole or any part thereof.

[redacted] If it is shown that a witness has testified falsely on any material matter, you should distrust his testimony in other particulars, and in that event you are free to reject all of the witness' testimony.

[redacted] It is your over-all duty to scrutinize carefully the testimony given, and in so doing you are to consider the following: the circumstances under which the witness testifies; his demeanor and manner on the witness stand; his intelligence; the connection or relationship which he bears to the Government or to the defendants, or any of them; the manner in which he might be affected by the verdict; the extent to which he is contradicted or corroborated by other evidence, if at all; any other matter which reasonably sheds light upon the credibility of the witness.

[redacted] You must disregard entirely any testimony stricken out by the Court, or any testimony to which an objection has been sustained. In the course of this trial certain documents were admitted for a limited purpose, and certain documents were admitted for illustrative purposes. As to those documents, you should consider them only, and give them weight only for the purpose for which they were offered, and received in evidence.

[redacted] Counsel, in arguing this case to you, have commented upon and argued upon the facts, as is their privilege and their duty. If you find any variance between the facts testified to by the witnesses and what has been stated to you by counsel to be the facts, to the extent of such variance you must consider only the facts testified to by the witnesses.

[redacted] In a case which has taken as long as this case has, and with the multitude of exhibits, and the long course of the testimony, you may find discrepancies or inconsistencies in the testimony of a witness or perhaps between the testimony of different witnesses. If such discrepancies or inconsistencies are not material and do not affect the true issues of this case, and if they do not reasonably bear upon the guilt or innocence of the defendants, or any of them, do not waste any time in considering them.

[redacted] Generally speaking, you should use your good sense here, ladies and gentlemen, just as you would in acting upon the most vital and important matters pertaining to your own affairs. Resolve the facts of this case according to calm, deliberate and cautious judgment, in the light of your own knowledge of the natural tendencies and propensities of human beings.

Remember that the defendants are entitled to any reasonable doubt you may have in your minds, but at the same time remember that if you have no such doubt, the Government is entitled to a verdict.

[redacted] Some of the defendants in this case have testified in their own behalf. That being so, you will determine their credibility according to the same standards applied to any other witness. These standards I have already pointed out to you; you may also consider in this connection the interest the defendants, or any of them, may have in the case, their hopes and their fears, and what they, or any of them, have to gain or lose as a result of your verdict.

There are two kinds of evidence in most cases, direct and circumstantial evidence. I should say to you that perhaps the simplest definition of the weight of circumstantial evidence is this:

[redacted] In order to justify a jury in finding a verdict of guilty based entirely upon circumstantial evidence the facts must not only be consistent with the guilt of the defendants, or any of them, but they must be inconsistent with any other reasonable hypothesis that can be predicated upon the evidence. In other words, not only must each fact relied upon to show guilt be proved beyond a reasonable doubt, but such fact must be consistent with all the other facts introduced in the chain of circumstances, and most further be inconsistent with any other rational conclusion than that of guilty.

The law that is involved here has been referred to as the Sherman Anti-Trust Law. It is found in 15 U.S.C.A. § 1. It is very brief. I will read it to you:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal."

Later on the law provides:

"Every person who shall make any contract or engage in any combination or conspiracy declared hereinabove to be illegal, shall be deemed guilty of a misdemeanor."

[redacted] The purpose of the Sherman Anti-Trust Law, 15 U.S.C.A. §§ 1–7, 15 note, was to prevent and declare unlawful, con-

tracts and combinations designed to unduly restrain competition in interstate trade or unduly obstruct the free course of trade among the different states and with foreign countries. The restrictions imposed by this law were intended to frustrate unreasonable restraints but not to prevent the use of reasonable means to protect interstate commerce from injurious or destructive practices or the promotion of competition upon a sound basis.

Violation of the Sherman Anti-Trust Law, as I have just stated to you, is declared by the Act to be a misdemeanor. Being a misdemeanor, it is not required to be proved that defendants, or any of them, intended to violate the law, or intended to restrain interstate or foreign commerce. If you are convinced beyond a reasonable doubt to a moral certainty that defendants, or any of them, agreed and combined to restrain, fix, or depress prices of commodities moving in interstate commerce, their intent in entering into such agreement or combine is immaterial. The law presumes that persons intend the necessary and direct consequences of their acts.

The indictment in this case charges that the defendants entered into a combine or conspiracy to restrict or depress or stabilize prices for commodities that moved in interstate markets. It is necessary, therefore, for the court to briefly tell you what the requirements of the law are on the subject matter of conspiracy.

In order to establish the crime charged, it is only necessary, that the conspiracy or agreement to commit the particular offense against the United States as alleged in the indictment be established; it is not necessary to prove that the parties, or any of them, committed any overt act in furtherance thereof.

To constitute a conspiracy it is not necessary that two or more persons should meet together and enter into an express or formal agreement for the unlawful venture or scheme, or that they should directly, by words or in writing, state between themselves or otherwise what the unlawful plan or scheme is to be, or the details thereof, or the means by which the unlawful combination is to be made effective. It is sufficient if two or more persons, in any manner, or through any contrivance, positively or tacitly came to a mutual understanding to accomplish a common and unlawful design. In other words, when an unlawful end is sought to be effected, and two or more persons, actuated by the common purpose of accomplishing that end, work together in any way in furtherance of the unlawful scheme, every one of said persons becomes a member of the conspiracy. The success or failure of the conspiracy is immaterial, but before the defendants may be found guilty of the charge it must appear beyond a reasonable doubt that a conspiracy was formed as alleged in the indictment. and that the defendants were active parties thereto.

In order to warrant you in finding a verdict of guilty against the defendants, or any of them, it is necessary that you be satisfied beyond a reasonable doubt that a conspiracy as charged in the indictment was entered into between two or more of the defendants to violate the law of the United States in the manner described in the indictment.

Under the charge made, the conspiracy constitutes the offense and it must be made to appear from the evidence, beyond a reasonable doubt, before any defendant can be convicted, that such defendant was a party to the conspiracy and unlawful agreement charged.

Each party must be actuated by an intent to promote the common design. If persons pursue by their acts the same unlawful object, one performing one act, and a second another act, all with a view to the attainment of the object they are pursuing, the conclusion is warranted that they are engaged in a conspiracy to effect that object. Co-operation in some form must be shown. There must be intentional participation in the transaction with a view and purpose to further the common design. And if such a person, understanding the unlawful character of a transaction, encourages, advises, or in any manner, with a purpose to forward the enterprise or scheme, assists in its prosecution, he becomes a conspirator.

Where the existence of a criminal conspiracy has been shown, every act or declaration of each member of such conspiracy, done or made thereafter pursuant to the concerted plan and in furtherance of the common object, is considered the act and declaration of all of the conspirators and is evidence against each of them.

The evidence in proof of the conspiracy may be circumstantial. Where

circumstantial evidence is relied upon to establish the conspiracy or any other essential fact, it is not only necessary that all the circumstances concur to show the existence of the conspiracy or fact sought to be proved, but such circumstantial evidence must be inconsistent with any other rational conclusion. That is, you are to consider all of the circumstances and conditions shown in evidence, and if it appears to you as reasonable men and women that, even though there is no direct evidence of the actual participation in the alleged offense by the defendants or any of them, a reasonable inference from all of the facts and circumstances does to your minds, beyond a reasonable doubt, show that the defendants, or some of them, were parties to the conspiracy as charged, then you should make the deduction and find accordingly.

▆▆▆▆▆▆ By the Sherman Anti-Trust Law, the fixing of prices by two or more persons acting in combination or agreement is unlawful and such agreement or combination is unlawful. If it be determined that an agreement or conspiracy (which I have already defined to you) has for its purpose, or the effect of which is to fix, stabilize or otherwise substantially affect prices of commodities moving in interstate commerce, then the purpose or intent or motives, however, harmless, which the parties to such agreement say or claim to have had in mind in entering into or promoting such agreement, is immaterial and not a defense. No matter what the motive of the parties to such an agreement, if such agreement in fact does so affect prices of commodities moving in interstate commerce, the parties to such agreement have violated the Sherman Anti-Trust Act.

Any combination which tampers with price structures is engaged in an unlawful activity. To the extent that members of such a combination raise, maintain or stabilize prices they are directly interfering with the free play of market values. The Sherman Anti-Trust Act places all such schemes beyond the pale and protects that vital part of our economy against any degree of interference.

As the counsel have pointed out to you, the indictment here was originally in two counts. The second count has been already dismissed. The indictment, in the count now remaining, charges the formation and carrying out of an unlawful conspiracy to unreasonably, unduly and direct-

ly restrain interstate and foreign commerce of dried fruit products in violation of the provisions of the Sherman Act, which I have read to you. It charges that the object and purpose of the alleged conspiracy was to fix, maintain, stabilize and depress prices paid by defendant packers to growers for dried fruit products purchased for distribution in interstate commerce and to fix, maintain and stabilize at artificial and non-competitve levels dried fruit prices for products sold by the defendants in interstate commerce. That is the charge.

Now, ladies and gentlemen, let me say this to you: You have had a pretty clear description from the evidence of the manner in which the dried fruit industry is conducted in California, of the processes through which the products go before being finally sold and then proceed to the trade in interstate commerce. It appears in this case that a number of corporations, including co-operative organizations, have been charged in this indictment wth a conspiracy, the nature of which has already been explained to you, and that the Dried Fruit Association, a defendant here, was an association which consisted of all of these defendants, as well as others who have been already dismissed from this proceeding.

▆▆▆▆▆ A co-operative association, such as the Dried Fruit Association, one of the defendants in this case, otherwise free from objection, which carries with it no monopolistic menace is not to be condemned as an undue restraint upon interstate commerce merely because it, and its members, may effect changes in market conditions where the changes are in mitigation of recognized evils and do not impair, but rather foster, fair competitive prices.

In this case, the evidence without dispute shows that the other defendants were members of the defendant Dried Fruit Association for varying periods, and all at some time within the period commencing January 1, 1936, and ending June 3, 1941, the latter date being the date of the return of the indictment herein. The evidence without dispute also shows that all of the members of the association agreed by subscribing to membership therein, that certain rules, regulations and practices promulgated by the association were binding upon and to be adhered to by the members. Among the practices, rules and regulations were the following: Use of uniform form of sales contract in different branches of

the industry for purchase and sales by the packer members; uniform carton and label allowances; prohibition of guarantees against price decline; price differentials between various packages of fruit; uniform discount charges; uniform prohibition of credit; prohibition of minimum returns to growers; prohibition against so-called flat buying; requirement that merchandise be shipped f.o.b. California shipping points; requirement that growers be paid for No. 2 grade fruit on a percentage basis of the price for No. 1 grade fruit.

It further appears that there was free and active competition in the market at all times with respect to the basic price for dried fruit products bought and sold by the defendant packers, and that such prices were arrived at by free bargaining.

It is contended by the Government that the rules regulations and practices of the Dried Fruit Association that have been mentioned, affected substantially the free determination in the market of the prices of the various commodities involved as they moved in the stream of interstate commerce.

As the Court sees it, therefore, the issue for your consideration is this: When the Dried Fruit Association and its members associated themselves together and bound themselves to follow the rules, regulations and practices hereinbefore described, did they thereby agree to fix, stabilize or substantially affect the prices of California dried fruit products as they moved in interstate commerce?

Inasmuch as the indictment in this case specifically charges the defendants with the formation and carrying out of an illegal conspiracy to fix, maintain, stabilize and depress prices; and inasmuch as it is claimed by the Government that the rules, regulations and practices above referred to affect only prices, or the price structure, your consideration should be limited to the question just put to you, which I will repeat in somewhat different form as follows: Do the rules, regulations and practices above mentioned amount to an agreement on the part of the defendants to substantially fix, stabilize or affect the market prices of the commodities in question in interstate commerce? Unless you are convinced beyond a reasonable doubt and to a moral certainty that such was the purpose or effect of these practices, rules and regulations you must acquit the defendants.

Putting it in still another form in order that the issue may be quite clear to you, the Government contends that the rules and practices referred to could have no other purpose except to stabilize the price structure, and that such was the intent of the defendants in agreeing to and abiding by these regulations and practices. On the other hand, the defendants contend that the purpose of the rules and practices was to eliminate evils in the industry substantially disconnected with the price structure, or any matter involving price structure. The conflict on this issue, and this is the real issue in the case, is for you to resolve.

I do, however, wish to submit the following as an enlightening type of inquiry for you to pursue in endeavoring to resolve that issue:

Having in mind the undisputed evidence with respect to the unquestioned competition as to basic prices between the defendant packers in both purchasing and selling dried fruit products, are you convinced that any or all, of the rules, regulations and practices referred to, separately or in combination are of such substance as to have a real and actual effect upon market prices, or the price structure, in interstate commerce, to the extent inhibited by the statute? It would not be proper for you to conjecture or speculate as to whether or not such rules and regulations or practices might or could possibly have some effect upon market prices in interstate commerce. There must be evidence which convinces you that such rules, regulations and practices, in fact and in actuality, did substantially affect, or were intended to affect, fix or stabilize market prices, or the price structure, in interstate commerce.

In suggesting such a field of thought to you, the Court is not intending to advise you with respect to your verdict in this case. Despite any opinion which the Court might have, and which it does not express, it is your exclusive province to weigh the evidence and decide the fact. The field of inquiry to which I have referred is merely by way of suggestion to the jury and no more.

Ladies and gentlemen, if you can conscientiously do so, you are expected to agree upon a verdict. You should freely consult with one another in the jury room. If any one of you should be convinced that your view of the case is erroneous, do not be stubborn, and do not hesitate to

abandon your own view under such circumstances. On the other hand, it is entirely proper to adhere to your own view if after a full exchange of ideas you still believe you are right.

. You may acquit or convict any or all of the defendants, separately or as a whole, in this case. You can find a separate verdict as to any of the defendants.

The Court wishes to finally caution you that if it becomes necessary for the jury to communicate with the Court during its deliberations, or upon its return to Court, respecting any matter connected with the trial of this case, you should not indicate to the Court in any manner how the jury stands, numerically or otherwise, on the question of the guilt or innocence of the defendants, or any of them. This caution the jury should observe at all times after the case is submitted to it, and until the jury has finally reached a verdict.

Whenever all of you agree to a verdict, it is the verdict of the jury. In other words, your verdict must be unanimous.

When you retire to the jury room to deliberate, you will select one of your number as foreman or forelady and he, or she, will sign your verdict for you when it has been agreed upon, and he or she will represent you as your spokesman in the further conduct of this case in this court.