**Mary P. REYNOLDS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 14783.

United States Court of Appeals Ninth Circuit.

Nov. 7, 1956.

Before DENMAN, Chief Judge, and BARNES and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

Mary P. Reynolds was acquitted of the crime of murder in the second degree, but convicted of the lesser and included offense of manslaughter. On this appeal, she questions the sufficiency of the evidence and the giving of certain instructions.

The facts essential to a consideration of the specifications of error may be briefly stated. Duncan Wallace McIntosh was killed by a shot fired from a 9 mm. Luger pistol at 3:04 a. m., April 8, 1954. This occurred in the apartment shared by appellant and McIntosh. No one else was present when the shot was fired.

The two had been drinking excessively at several bars before going to their apartment shortly after 2:30 a. m. Appellant was also subject to diabetic comas. She testified that she did not know whether it was McIntosh or she who fired the shot. She further testified, however, that McIntosh had struck and choked her, water had been thrown on her, and McIntosh had threatened her with the gun. One witness testified that appellant admitted shooting McIntosh. Another witness testified to a telephone conversation shortly after the shooting, in which a woman, who gave her name as "McIntosh," stated that she had shot McIntosh. On the other hand, a man who lived in the apartment below testified that he had heard the pistol shot, and that about five minutes later he heard a woman exclaim, "Why did you do it? Why did you shoot yourself?"

There was a good deal of additional evidence concerning the activities of appellant and McIntosh earlier in the evening; what was found when officers and friends reached the apartment after the shooting; the conclusions to be drawn from the bullet holes and lack of powder burns; and other matters. Appellant was found to be bruised around the throat and drenched with water. McIn-

George B. Grigsby, Anchorage, Alaska, for appellant.

William T. Plummer, U. S. Atty., James M. Fitzgerald, Asst. U. S. Atty., Anchorage, Alaska, for appellee.

tosh, in addition to the bullet wound, had deep scratches on his face.

At the trial, appellant defended on two alternative theories: (1) That McIntosh committed suicide; and (2) that if appellant did shoot McIntosh, she did so in self defense.

■■ Considering the evidence in the light most favorable to the government, as we are required to do,[1] it is our view that there was sufficient competent evidence to sustain every element of the crime of manslaughter.

Appellant contends that the second paragraph of the following instruction on the presumption of innocence is an incorrect statement of law, and that its giving was prejudicial error:

"The law presumes every person charged with crime to be innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless and until, by the evidence introduced before you, you are convinced the defendant is guilty beyond a reasonable doubt.

"This rule, as to the presumption of innocence, is a humane provision of the law, intended to guard against the conviction of an innocent person, but it is not intended to prevent the conviction of any person who is in fact guilty, or to aid the guilty to escape punishment."

In Gomila v. United States, 5 Cir., 146 F.2d 372, an instruction on the presumption of innocence, containing what was, in effect, a similar qualification, was held to be not a correct statement of the law. Considering the cumulation of this and other errors, the court reversed and remanded for a new trial.

In Moffitt v. United States, 10 Cir., 154 F.2d 402, certiorari denied, 328 U.S. 853, 66 S.Ct. 1343, 90 L.Ed. 1625, it was held that an instruction containing about

the same qualification was a correct statement of the law. The court reasoned that, when read with the other instructions, this qualification did not imply that the presumption was to be used only if the jury should feel the defendant was innocent.

In United States v. Farina, 2 Cir., 184 F.2d 18, 23, certiorari denied, 340 U.S. 875, 71 S.Ct. 121, 95 L.Ed. 636, it was held that the statement that the presumption of innocence was not intended as a bulwark behind which the guilty might hide, was, in a general sense, true. It is objectionable, said the court, only if it might lead a jury to suppose that the presumption could not be invoked until a defendant has dispelled proof of his guilt. The court held that, read in context with other instructions, the language in question would not have that effect.

In the Farina case, the court distinguished Gomila v. United States, supra, expressing the view that the instruction given in Gomila might have led a jury to suppose that a defendant could invoke the presumption only after he had established his innocence. It was also pointed out that the reversal in Gomila was for a "cumulation" of errors. Judge Frank filed a vigorous dissent in Farina, stating that were it necessary he would hold that the " 'presumption of innocence' error" alone warranted reversal.

Instructions on the presumption of innocence containing a similar qualification have been approved in Illinois, in a long line of cases extending from Spies v. People, 122 Ill. 1, 12 N.E. 865, 17 N.E. 898, pet. for writ of error dismissed, 123 U.S. 131, 8 S.Ct. 22, 31 L.Ed. 80, to People v. Henderson, 378 Ill. 436, 38 N.E.2d 727. Such a qualification of this instruction has apparently not been sanctioned in the recent decisions of any other state.[2]

1. Kowalchuk v. United States, 6 Cir., 176 F.2d 873; United States v. Horton, 7 Cir., 180 F.2d 427.

2. In at least five states, in addition to Illinois, there are early decisions approving the qualification, though with seeming lack of enthusiasm in some cases. See Turner v. State, 102 Ind. 425, 1 N.E. 869; State v. Keith, 53 Mo.App. 383; State v. Medley, 54 Kan. 627, 39

■ The presumption of innocence is predicated not upon any express provision of the federal constitution, but upon ancient concepts antedating the development of the common law.[3] Wigmore points out that, while this presumption is another form of expression for a part of the accepted rule concerning the burden of proof in criminal cases, it does serve a special and additional purpose.[4] It has been characterized as one of the strongest rebuttable presumptions known to the law. Bradford v. United States, 5 Cir., 129 F.2d 274, certiorari denied, 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547.

■■ The presumption of innocence was developed for the purpose of guarding against the conviction of an innocent person. It was not developed for the purpose of aiding the guilty to escape punishment. It is nevertheless perfectly plain that the presumption, together with the related rule on the burden of proof, in guarding against the conviction of an innocent person, may in some cases prevent the conviction of a person who is actually guilty. Thus, where the prosecution is unable to muster evidence sufficient to overcome the presumption, there will be an acquittal, even though the defendant be actually guilty.

This is a calculated risk which society is willing to take. It does so because it regards the acquittal of guilty persons less objectionable than the conviction of innocent persons.

The inclusion of the qualification in question in an instruction on the presumption of innocence is designed to curb that calculated risk. It accomplishes this by implying that society is just as anxious to convict the guilty as it is to acquit the innocent. The implication is false, else there would be no presumption of innocence. It subverts the presumption, since it distracts attention from its paramount purpose of protecting the innocent. When this qualification is added to an instruction on the presumption of innocence, the result is to leave matters about where they would have been had no instruction on the presumption been given.

■ Since it is right to instruct on the presumption of innocence, it is wrong to add this self-defeating qualification. We therefore find ourselves in agreement with Gomila v. United States, supra, and with Judge Frank's dissent in United States v. Farina, supra. We conclude that it was prejudicial error to give the instruction in question.

■ Under another specification of error, appellant directs attention to an instruction given on the subject of excusable homicide. It is contended that the instruction, while embodying a correct statement of the law, should not have been given, because it has no application to the facts in the case.

We agree. In Alaska, homicide is not excusable when a dangerous weapon is

---

P. 227, " * * * although this statement may not have been necessary to the proper submission of the case * *"; State v. Hanlon, 38 Mont. 557, 100 P. 1035, " * * * while we think the instruction might just as well have been omitted * * *"; State v. Gee Jon, 46 Nev. 418, 211 P. 676, 217 P. 587, 30 A.L.R. 1443.

3. 9 Wigmore on Evidence (3d ed.) § 2511, 406 et seq.; Thayer, A Preliminary Treatise on Evidence at the Common Law, Appendix B, 551 et seq.; Coffin v. United States, 156 U.S. 432, at page 453, 15 S.Ct. 394, 403, 39 L.Ed. 481, where the court said: "The principle that there is a presumption of in-

nocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."

4. He writes: "However, in a criminal case the term does convey a special and perhaps useful hint, over and above the other form of the rule about the burden of proof, in that it cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclusion solely from the legal evidence adduced * *." 9 Wigmore on Evidence (3d ed.) § 2511, 407.

used.[5] McIntosh was killed with a dangerous weapon. While the giving of this instruction may not have been prejudicial, it should be omitted on the new trial which we must order.

The final specification of error complains of the incompleteness of the instructions on self defense. In our view, these instructions were correct, and were as complete as the evidence in this case would allow.

Reversed and remanded for a new trial.

5. Alaska Compiled Laws Annotated, vol. 3, § 65–4–11.