**UNITED STATES of America,
Appellee,**

v.

**Charles E. BROWN, Appellant.
No. 552, Docket 29658.**

United States Court of Appeals
Second Circuit.

Argued June 14, 1965.

Decided July 22, 1965.

Certiorari Denied Nov. 8, 1965.
See 86 S.Ct. 240.

**662**

Neal J. Hurwitz, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, on the brief) (John E. Sprizzo, Asst. U. S. Atty., of counsel), for appellee.

Daniel H. Greenberg, New York City, for appellant.

Before KAUFMAN, HAYS and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

This is an appeal from a judgment of conviction for violating 18 U.S.C. § 472, entered upon a jury verdict. We affirm.

■ Appellant was charged with passing and possessing counterfeit $10 Federal Reserve Notes with intent to defraud. It is conceded that appellant passed and possessed the counterfeit bills. He defended on the theory that he did not know that the bills were counterfeit, a necessary element of the crime. United States v. Carll, 105 U.S. 611, 613, 26 L.Ed. 1135 (1882). The jury resolved this issue against appellant, and we hold that even in light of the strictures of Marson v. United States, 203 F.2d 904, 906 (6 Cir. 1953), and United States v. Forzano, 190 F.2d 687, 688 (2 Cir. 1951) against inferring the guilty knowledge from mere possession of counterfeit money, there was sufficient evidence upon which a reasonable jury could conclude that the prosecution proved beyond a reasonable doubt that appellant knew the bills were counterfeit.

Appellant claims that certain of this evidence supporting the verdict is hearsay and that the judgment of conviction should be reversed because its admission was erroneous. A prosecution witness, a Mr. Keys, testified that he owned a bar in the same town as where appellant had tried to pass the counterfeit bill, that on the day before the incident alleged in the indictment occurred a man came into his bar and tendered a $10 bill, that he recognized this bill as counterfeit and that he "threw it back" at the man. Government counsel then asked whether that man was present in the courtroom and the witness replied, much to counsel's surprise, "I'm not sure." The witness then testified that on the next night he had been shown a man through a window in a door at the police station, whom he then identified as the man who attempted to pass him the counterfeit bill the night before. Counsel then asked Keys whether the man he identified was present in the courtroom, and the witness replied, "I'm not sure." Appellant's counsel did not cross-examine Keys.

After this witness was excused, the following occurred:

Mr. Greenberg [defense counsel]: At this time I wish to strike this last witness's entire testimony.

The Court: I deny the motion.

Mr. Hurwitz [Government counsel]: May we have a side-bar conference at this time?

The Court: Yes.

(At the side-bar, without the hearing of the jury:)

\* \* \* \* \*

Mr. Hurwitz: \* \* \* As may be apparent, this last witness positively identified Brown on the night of April 4th, and, indeed, had given us the description prior to that.

The Court: Why don't you call in the detective?

Mr. Hurwitz: I want to call the detective right now.

The Court: You have established the chain of circumstances. It seems to me, if you don't do it he might have been right in moving to strike it.

Mr. Hurwitz: I propose to call one of the two detectives.

Mr. Greenberg: I object to it.

Mr. Hurwitz: I don't see anything objectionable about it.

The Court: I don't either.

(In open court.)

Mr. Hurwitz: Your Honor, may I recall Mr. Jerome Rapaport.

The Court: Yes.

*Direct Examination by Mr. Hurwitz:*

Q. Mr. Rapaport, you are still under oath. A. Yes.

Q. You testified on previous examination that you were at police headquarters in Port Chester, New York, on the evening of April 4, 1964. A. Yes.

Q. Did a Mr. William Keys arrive at police headquarters at Port Chester, New York? A. Yes.

Q. Do you know who Mr. William Keys is? A. Yes.

Q. What happened after he arrived? A. Well, Mr. Brown—he made a positive identification.

Mr. Greenberg: I object to that. It is a conclusion of the witness.

The Court: Yes, sustained. Strike it out.

Just tell us exactly what you saw him do.

Q. Tell us exactly what he did on that evening. A. Brown was in a section of the detectives' room. Mr. Keys went in there and looked through a two-way mirror glass that we had, and I remember I banged on the door, and Brown looked up, and he made an identification of the person that was in his bar.

Q. Of the person that was in whose bar? A. Mr. Keys' bar.

Mr. Hurwitz: I have no further questions.

(Witness excused.)

Appellant complains that Officer Rapaport testified as to hearsay when he testified that the man identified by Keys was the appellant and that this testimony was inadmissible as substantive evidence under the rule of Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945) barring prior unsworn statements of a declarant available at trial for cross-examination. Appellee contends that what Officer Rapaport had testified to was not a statement of Keys, but rather an act of his, identifying a man, who the Officer could now identify, but Keys couldn't. It is urged that the rule of Bridges v. Wixon applies to testimony of prior statements rather than to prior identifications such as this, and we are referred to 4 Wigmore, Evidence, § 1130 (3rd ed. 1940) and United States v. Forzano, 190 F.2d 687, 689 (2 Cir. 1951).

It is, however, unnecessary for us to pass on the merits of this controversy, for it appears from the portion of the transcript quoted above, quite contrary to the impression created by appellant's counsel, with the acquiescence of the Government's counsel, that no hearsay objection was taken to the Officer's testimony. As far back as 1912 the Supreme Court declared in Diaz v. United States, 223 U.S. 442, 450, 32 S.Ct. 250, 252, 56 L.Ed. 500, that if hearsay evidence "is admitted without objection, it is to be considered and given its natural probative effect as if it were in law admissible." Cf. also United States v. Torres, 343 F.2d 750, 752 (2 Cir. 1965) (failure to object to admission of statement allegedly obtained during period of unnecessary delay prior to arraignment).

When first informed of the prosecutor's intention to recall Officer Rapaport, appellant's counsel said, "I object to that." However, this general objection does not cure the defect noted, especially since both the trial judge and the prosecutor indicated that they did not understand the basis of the objection

and the objection was not renewed at the time Rapaport testified as to Keys' identification of appellant. Subject to an exception not here applicable, "the cardinal principle (no· sooner repeated by Courts than ignored by counsel) is that a *general objection, if overruled,* cannot avail the objector on appeal," 1 Wigmore, Evidence, § 18, at 332 (3rd ed. 1940).

Affirmed.