**UNITED STATES of America**

v.

**John Joseph MEISCH, Appellant.**

**No. 15492.**

United States Court of Appeals Third Circuit.

Argued April 15, 1966.

Decided Dec. 30, 1966.

Michael A. Querques, Orange, N. J. (Querques & Isles, Orange, N. J., Harvey Weissbard, Orange, N. J., on the brief), for appellant.

Barry D. Maurer, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before McLAUGHLIN, GANEY and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

Defendant-appellant was convicted for having violated § 472 of Title 18, U.S.C. His alternative post-trial motions for judgment of acquittal and for a new trial were denied and he was sentenced to four years imprisonment. On this appeal he claims the indictment is defective because it failed to allege that he knew the Federal Reserve notes were counterfeit[1] and, therefore, the court erred in denying his motion for "judgment of acquittal".

1. Of course, such knowledge is essential to conviction. United States v. Brown, 348 F.2d 661 (C.A.2, 1965). United States v. Releford, 352 F.2d 36 (C.A.6, 1965).

The indictment reads:

"On or about the 14th day of May 1964 at Edison Township, in the State and District of New Jersey,

JOHN JOSEPH MEISCH

*with intent to defraud,* did possess, pass, utter and sell to Leonard Vecchione forty-three (43) counterfeited * * * ten ($10.00) dollars Federal Reserve notes * * *.

"In violation of Title 18 U.S.C., Section 472." (Emphasis added.)

■ The short answer to appellant's claim is that the phrase "with intent to defraud" includes a charge of knowledge on the part of the defendant that the notes were counterfeit. Rua v. United States, 321 F.2d 140 (C.A.5, 1963).

Appellant sets forth a number of reasons why, in his estimation, the district court committed reversible error in refusing to grant him a new trial. Foremost among these is the trial judge's refusal to direct the prosecution to deliver to the appellant a secret-service case report. The report was made by a government agent who testified at the trial. We conclude that the refusal was reversible error warranting the granting of a new trial.

Only two witnesses, both of them being special agents of the United States Secret Service, testified against appellant at the trial on behalf of the prosecution. The first was Casimir M. Szpak; the other was Leonard A. Vecchione, the person named in the indictment as the one to whom appellant sold the counterfeited ten-dollar notes. Szpak testified that he witnessed the transaction between Vecchione and appellant on May 14, 1964, from a vantage point sixty feet way.

During cross-examination of Szpak, defense counsel learned from him that he had made two written statements pertaining to the matters about which he testified. The first was contained in a letter, dated September 11, 1964, addressed to the United States Attorney for the District of New Jersey at Newark. The second was a case report dated May 26, 1964, sent by Szpak to his superiors in Washington, D. C. Defense counsel sought permission from the trial court to see both statements, pursuant to subsection (b) of the Jencks Act, 18 U.S.C.A. § 3500(b).[2] The trial judge, after reading the letter, directed the prosecution to place it at defense counsel's disposal, which he did. In pertinent part, the letter stated under the heading "Details of offense":

On or about May 14, 1964, Special Agent Leonard Vecchione, acting in an undercover capacity, met defendant Meisch at the parking area of the Cork and Bottle Bar in Edison Township, N. J. As a result of this meeting, Meisch sold 43 counterfeit $10 F R notes (Exhibit A) to S A Vecchione for $65 in official Government Funds. This sale was covered by Special Agents C. M. Szpak and B. J. Mullady.

Defense counsel then cross-examined Szpak for the purpose of bringing home to the jury that the letter was completely barren of the details of the May 14 occasion about which Szpak had testified on direct examination. It is evident, we think, that the brief notation in the letter was not meant to be a detailed disclosure of what Szpak observed on May 14, and the trial judge correctly so admonished the jury.

■ The case report was not in court at the time Szpak was being cross-examined, and defense counsel reserved the right to recall and further cross-examine him after the defense had read the report. When Vecchione had finished testifying, the prosecution produced a government

2. This subsection provides: "(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use."

file containing, inter alia, a carbon copy of the case report dated May 26, 1964, signed by Szpak, and a carbon copy of the letter of September 11. After the trial judge examined all the papers in the file, he remarked that he saw nothing in them to which defense counsel was entitled that he did not already have, since he had the original letter. Aside from the case report, the other papers in the file were not pertinent to the issues involved and, therefore, appellant had no right to their production. Since defense counsel had been given the original letter, the court did not err in refusing to order that the copy be turned over to him. Rosenberg v. United States, 360 U.S. 367, 379, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959). There was nothing in the remaining papers which related to the subject as to which Szpak had testified on the stand. However, the case report is another matter. There was information in it which specifically related to the subject matter of Szpak's testimony. In addition to information about contacts with an informant, William C. Barker, Jr., which did not coincide with his testimony, the events of May 14th were reported substantially as told by Szpak on the witness stand and, as expected, in greater detail than in the letter.

■ The fact that Szpak's testimony was more revealing than the case report *is not a valid reason for refusing to permit the defense to see it.* This is not the test under the statute. The purpose of requiring the delivery to a defendant of a prior statement "which relates to the subject matter as to which a witness has testified" is not solely to provide him a means of obtaining information divulged by the witness's testimony, but to give him an opportunity *to use it as he deems fit for trial purposes.* "[W]hether the statements may be useful for purposes of impeachment is a decision which rests, of course, with the defendant himself." Scales v. United States, 367 U.S. 203, 258, 81 S.Ct. 1469, 1501, 6 L.Ed.2d 782 (1961). In Campbell v. United States, 373 U.S. 487,

497, footnote 13, 83 S.Ct. 1356, 10 L.Ed. 2d 501, the Supreme Court pointed out that under Jencks v. United States, 353 U.S. 657, 677–678, 77 S.Ct. 1007, 1501, 1 L.Ed.2d 1103, a showing of inconsistency as a prerequisite to the production of documents is unnecessary. See also Lewis v. United States, 340 F.2d 678 (C.A.8); United States v. Prince, 264 F.2d 850, 852 (C.A.3). Nevertheless, as has been indicated earlier, it affirmatively appears that the report could have been advantageously used by the defense to impeach Szpak concerning his testimony of events about the informant, Barker, who accompanied Vecchione to the parking area of the Cork and Bottle Bar in Edison Township. The refusal of the trial judge to direct the prosecution to deliver the May 26, 1964, report, with such portions which did not relate to the subject matter of Szpak's testimony deleted, to the appellant for his use at the trial was not harmless error. See United States v. McCarthy, 301 F.2d 796 (C.A.3, 1962).

■ The appellant complains about the trial judge's admonition in the midst of the trial regarding his attorney's use of the letter of September 11, 1946, in cross-examining Szpak. The trial judge told the jury that this letter, containing but six lines with reference to the happenings of May 14, 1964, did not, in any wise, propose to spell out the details of the event of that day. This was fair comment on the document shown to the jury, and was eminently proper.

Nor did the trial judge overstep the bounds of propriety in his questioning of Vecchione while he was on the witness stand.

■ There was no error in the trial court's refusal to permit appellant to introduce into evidence the official record pertaining to the indictment and arraignment of Barker who was present in court but not called as a witness by either side. It was appellant, not the prosecution, who brought to the attention of the jury Szpak's conversations with Barker on cross-examination, apparently to impeach his credibility, even though appellant ob-

jected to any such conversations on direct examination.

Appellant asserts that the actions of the prosecuting attorney, in three respects, were prejudicial. He complains of a statement made in opening to the jury, a statement made during summation, and questions asked of a witness for the prosecution.

In his opening statement, the attorney for the prosecution said: "And I am convinced, as I am sure you will be when you hear the evidence and see it presented before you, that there will be no question but that defendant, Meisch, is guilty of the crime charged." This could not be construed as a statement of personal knowledge deemed to be especially objectionable as in Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Here, the statement of belief in the guilt of appellant was stated by the prosecuting attorney to be based upon the evidence to be presented.

The statement in his summation concerning why the arrest of appellant was made three months after the events charged in the indictment was as follows: "You remember the testimony why they waited for three months. They were checking him out. That makes sense, doesn't it? It does to me." This like-wise was not a statement of personal knowledge.

As to the questions, appellant claims they were so framed as to insinuate that he was involved in prior dealings with counterfeit money or associated with known counterfeiters. These questions were asked by the prosecution in anticipation of a defense of entrapment. Nevertheless, the questions were stricken and the jury admonished by the trial judge to disregard them. Assuming that appellant might have been prejudiced by those questions, we believe they should not be repeated in the next trial unless the appellant indicates that he will raise that defense.

Appellant also brings to our attention the trial judge's instruction to the jury that a "witness is presumed to speak the truth but this presumption may be outweighed by the manner in which the witness testifies, by the character of the testimony given or by contradictory evidence." [3] It is perhaps safe to say that the vast majority of witnesses speak the truth and that jurors are aware of this. But we have not found an authoritative case, and the prosecution has cited none, casting that tendency of human nature into a legal presumption in a criminal case tried to a jury.[4] In addition

---

3. These words appear in that portion of the charge by the Court and followed verbatim, instructions number 3.01 (Credibility of Witnesses—Discrepancies in Testimony) appearing in Judge William C. Mathes' helpful suggested "Jury Instructions and Forms for Federal Criminal Cases," appearing in 27 F.R.D. 67–68 (1961). In a more recent helpful volume printed by the publishers of Federal Rules Decisions for judges and practitioners, the wording has been changed to "Ordinarily, it is assumed that a witness will speak the truth." Mathes and Devitt, Federal Jury Practice and Instructions (1965) § 72.01.

   Compare 98 C.J.S. Witnesses § 459 (1957) with 58 Am.Jur., Witnesses, § 861 (1948).

4. A charge in a federal criminal proceeding containing an instruction that a witness is presumed to speak the truth is set forth in United States v. Dried Fruit Ass'n of California, 4 F.R.D. 1, 5 (D.C.N.D.Cal. 1933). In two cases, the court stated that this was a rule of law. Wong Kam Chong v. United States, 111 F.2d 707, 711 (9 Cir. 1940) and Wichman v. Allis Chalmers Mfg. Co., 117 F.Supp. 857, 860 (W.D.Mo. 1954). The first case was a deportation proceeding in which the testimony in question was given before an immigration officer. The second involved a civil action tried to the court without a jury.

   In commenting about a witness' knowledge, Wigmore says:

   "It is obviously impossible to speak with accuracy of a witness' 'knowledge' as that which the principles of testimony require. If the law received as absolute knowledge what he had to offer, then only one witness would be needed on any one matter; for the fact asserted would be demonstrated. When a thing is *known* (by a tribunal or other decid-

to derrogating from the jury's sole right to determine the credibility of witnesses, this rule conflicts with the presumption of innocence of a defendant. Attempts to shorten this protective cloak have been nullified by the Courts. See, for example, Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); Reynolds v. United States, 238 F.2d 460, 16 Alaska 502 (C.A.9, 1956). The quoted words also clashed with the charge regarding the burden of proof. The appellant did not take the stand or offer any witnesses on his behalf. Under the circumstances the jury could have concluded that they were required to accept the testimony of the prosecution's witnesses at its face value since it was not contradicted by other witnesses. If the case is ever retried, the trial judge, in his charge to the jury, should not include therein the proposition that a witness is presumed to speak the truth.

■■■ The trial judge also charged the jury thus: "A juror should listen with deference to his fellow jurors and with distrust of his own judgment if he finds the large majority of jurors take a different view from that which he or she takes." This instruction was based on what was said on that subject in Allen v. United States, 164 U.S. 492, 501–502, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Also, see Burton v. United States, 196 U.S.

283, 308, 25 S.Ct. 243, 49 L.Ed. 482 (1905). We are aware that trial judges have wide discretion in shaping a charge to fit a particular case. But here there was no necessity for the so-called "Allen Charge". The indictment contained but a single count, and that was not complex. Only two witnesses were called in the case and their testimony was brief and to the point. Szpak's direct testimony covered approximately 13 pages of the transcript, while Vecchione's took 7½ pages. Cross-examination of these same witnesses required 28 and 38½ pages respectively for reproduction. The jury did not ask for supplemental instructions as in Shaffman v. United States, 289 F. 370, 374–375 (3 Cir. 1923). Nor was it recalled by the court for such purpose. Since the matter is to be remanded to the district court and there may be a new trial, we think the trial judge who presides at that trial should omit any reference to the "Allen Charge" unless the circumstances of the proof are much different from that of the first trial.

■■■ The appellant contends that the trial judge erred in refusing to charge that reasonable doubt could arise from a lack or failure of evidence. We have examined the charge and the instructions on reasonable doubt were adequate to give the jury an understanding of what that concept is. The trial judge need not fol-

---

er) to be, it *is;* and that would be the end of inquiry.

"Hence, a witness cannot be assumed beforehand, by the law, to know things; the most it can assume is that he thinks he knows. The law assumes that the matter is in truth of some particular complexion, but also realizes that to determine what is its real complexion the tribunal may have to listen to various persons; the statements of some of these it will reject, and of others it will accept.

"Nevertheless, from all the persons to whom the tribunal will listen the law will attempt to require *some qualification which will make them worth listening to.* It will not presume to determine beforehand which witness is correct— i. e. which one really *knows,*—but it will ask that each one offered shall be one 'prima facie' likely to know,—in short,

shall have had *an opportunity of observing* what was or what happened and shall have *directed his attention* or observation to the matter. This is as far as the law can go.

"Accordingly, the rules upon the subject in hand are all concerned, not strictly with the witness' knowledge, but with his *opportunities of observing* and his *actual observation.* * * *

"The practical tests, then, and the detailed rules, are in strictness concerned with Observation and not with Knowledge. Nevertheless, as the ultimate aim often gives name to the method, it may be said, roughly but sufficiently, that the qualification here involved is Knowledge,—at least as distinguished from Experience, Sanity, and the other qualifications of capacity to know." 2 Wigmore on Evidence (3rd Ed.) § 650.

low some ritual and use the precise words found in other decisions in informing the jury on this point. United States v. Schireson, 116 F.2d 881, 883, 132 A.L.R. 1157 (3 Cir. 1941). The trial judge did not err in refusing to charge as requested. See United States v. Caruso, 358 F.2d 184, 186–187 (C.A.2, 1966).

Appellant also complains of the trial court's refusal to charge that the government's failure to produce a witness who possessed knowledge of relevant facts and who is available "gives rise to [an] inference against the government that such evidence or testimony would be unfavorable to the government." The informant, Barker, had accompanied Vecchione to the place where appellant later sold the counterfeit bills to Vecchione. Barker was not in a position to have witnessed the transaction. He was in court during the trial but was not called as a witness. The court gave defense counsel an opportunity to converse privately with Barker. The former did not take advantage of this opportunity. Nor was he prevented in his summation from commenting upon the fact that the prosecution did not call Barker as a witness.

The court's charge, as given, set forth the general rule that the failure of the prosecution to bring before the jury a witness who could elucidate upon the facts seems to indicate that it fears to call that witness and this fear is some evidence that the witness if called would have exposed facts unfavorable to the party. Then the trial judge went on to add that there were exceptions to the general rule, one being that the inference cannot be fairly drawn from the non-production of a witness whose testimony would not be superior to others', and that another was where a potential witness is in court and available to both sides, the failure to produce that witness is open to an inference against either side, and the relative strength of each inference depended on the circumstances adduced at the trial. Appellant was not harmed by these instructions. See United States v. Jackson, 257 F.2d 41 (C.A.3, 1958).

Accordingly, the judgment of the district court will be reversed and the cause remanded for a new trial.

FREEDMAN, Circuit Judge (concurring).

I concur in the convincing opinion of the court reversing the judgment and awarding a new trial. Since there is to be a new trial, however, I believe we should now express our disapproval of the statement of the Assistant United States Attorney, which I read as the equivalent of an assertion that he was convinced from the evidence that would be produced that the defendant was guilty of the crime charged.[1] By this assertion the prosecutor placed into the jury's scales of deliberation the merits of his belief rather than the weight of the evidence.[2]

It has become a frequent practice for counsel in civil as well as criminal cases to tell the jury their conviction of the merits of their client's cause. Usually it is difficult to suppress such improper statements at the time they are uttered without the risk of committing the greater harm of injuring the client's case, and relief must be reserved for some general discussion in the court's charge on the role of counsel.

In the present case the judgment of conviction is being reversed and a new trial awarded. In this circumstance we should not lose the opportunity to declare for the guidance of the bar in future cases and on the retrial of this case that such statements are improper and should not be made. The evil is aggravated where the statement comes from the

1. The language, made in the prosecutor's opening statement reads: "And I am convinced, as I am sure you will be when you hear the evidence and see it presented before you, that there will be no question but that defendant, Meisch, is guilty of the crime charged."

2. On the subject of such statements see Sharswood's Professional Ethics (4th ed. 1876), pp. 99 et seq.; and Appendix, pp. 183 et seq. discussing the conduct of Charles Phillips in Courvoisier's case. See also Amer. Bar Assn's Canon 15 of Profess. Ethics.

government's attorney, who acts, as the Supreme Court said in Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), "not [as the representative] of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."

McLAUGHLIN, Circuit Judge (dissenting).

With due respect, it seems to me that the majority opinion in its zealous effort to uphold the Jencks Act has misconceived the true purpose of that statute. The Jencks Act was never intended to apply to the admittedly harmless error which occurred here. The uncontradicted facts and a tight consideration of the whole case show that the testimony of Agent Szpak, which is relied upon for reversal, is de minimis in the situation before us. His evidence was unimportant to the required proofs for conviction because that same evidence was included in the full detailed testimony at the trial by Agent Vecchione. The latter was the agent with whom the defendant talked and to whom defendant sold the counterfeit money. Szpak was merely an observer of that meeting from across the street.

The defendant, Meisch, was indicted under Section 472 of Title 18 U.S.C.A. for "uttering counterfeit obligations or securities." A conviction under Section 472 requires that the Government prove beyond a reasonable doubt that the defendant passed the notes with the intent to defraud and with knowledge that the notes are counterfeit, United States v. Carll, 105 U.S. 611, 26 L.Ed. 1135 (1881); United States v. Litberg, 175 F.2d 20 (7 Cir. 1949). Agent Vecchione testified that he met with the defendant on the night of May 14, 1964, that the defendant pointed out the package which contained the counterfeit bills and that the defendant told Vecchione that the money was "queer" (counterfeit). The package con-

taining the counterfeit bills was also introduced into evidence and properly identified by Vecchione as the package which was purchased from the defendant on the night of May 14th. The only report made by Agent Vecchione which dealt with matters upon which he testified was given to defense counsel and his testimony was in no other way challenged.

The Vecchione evidence alone supplied the requisite proof to uphold the conviction. All the elements charged in the indictment were brought forth by that oral testimony backed up as it was by the real evidence of the counterfeit bills. What is decisive here is that Vecchione's testimony was of such strength as to prove beyond a reasonable doubt the elements of the crime charged without the need of supporting witnesses.

The above conclusion is the doctrine of Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959), a landmark Jencks Act decision where a witness had written a letter to the F.B.I. stating that she feared her memory of the events in issue would be poor, the Court found that the nonproduction of the letter, though a violation of the Jencks Act, amounted only to harmless error since the same information was revealed to defendant's counsel by statements made by the witness under cross-examination and upon questioning by the trial judge.

In this appeal all the information in the Szpak report was revealed to the defense by Agent Szpak from the witness stand. I do not particularly stress that the Szpak testimony gave the defense more information than was in the report. I do point out that the one lone, insignificant item complained of in connection with the report is that it contained "information about contacts with an informant, William C. Barker, Jr., which did not coincide with his [Szpak's] testimony, * * * it affirmatively appears that the report could have been advantageously used *to impeach Szpak concerning his testimony of events about the informant, Barker, * * *."* (Emphasis supplied.) The definitive issue in

this appeal is not whether there could have been some attempted attack on Agent Szpak's credibility by way of his report. Our question is whether Szpak's testimony "* * * *was unimportant to the proofs necessary for conviction;"* Mr. Justice Brennan's dissent in Rosenberg v. United States, supra, 376, 377, 79 S.Ct. 1237 (emphasis supplied). The very same problem confronting us was before the Eighth Circuit Court of Appeals in Lewis v. United States, 340 F.2d 678 (8 Cir. 1965). There the report of Charles Hill, an undercover agent for the Bureau of Narcotics was improperly withheld. The court ruled p. 684:

"In the light of the above uncontradicted facts established at appellant's trial, and from a consideration of the whole record before us, we think the District Court's action and conduct in relation to the Jencks Act claim of error here made can only be considered and deemed to be harmless. *Appellant's guilt of the charge as made against him in counts IX and XII of his indictment, supra, was established beyond a reasonable doubt by competent testimony other than that as given by Witness Hill."* (Emphasis supplied.)

Mr. Justice Frankfurter's conclusion in Rosenberg, supra, is categorically applicable to this appeal. He said on p. 371 of that opinion in 360 U.S., on p. 1234 of 79 S.Ct. "There is such a thing as harmless error and this clearly was such."

In the light of the admitted facts and the governing law I suggest that it is a grievous mistake to reverse this lawfully established conviction on the erroneous theory that in so doing the Jencks Act is being upheld.

The concurring opinion expresses disapproval of the Assistant United States Attorney's statement to the jury that he was convinced that when the jury heard and saw the evidence presented before it "there will be no question but that defendant, Meisch, is guilty of the crime charged." In effect, the Assistant United States Attorney told the jury that he ex-

pected to present evidence to it which would prove the defendant's guilt beyond reasonable doubt. In giving his professional view of his proofs the Assistant United States Attorney in no way departed from his overall duty to see to it that justice be done. I strongly urge that the proposed comment which cannot but at the very least unwarrantably confuse our district judges, be withdrawn.