**UNITED STATES v. TITUS.**
**No. 9, Docket 22568.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 15, 1953.

Decided Jan. 25, 1954.

Anthony F. Caffrey, U. S. Atty. for the Northern Dist. of N. Y., Syracuse, N. Y. (Robert J. Leamy, Asst. U. S. Atty., Oneonta, N. Y., of counsel), for appellee.

William W. Barron, Washington, D. C., Paul R. Shanahan, Syracuse, N. Y., William J. Barron, New York City, for defendant-appellant.

Before CLARK, FRANK, and HINCKS, Circuit Judges.

FRANK, Circuit Judge.

1. *Alleged illegal constitution of the grand jury and petit jury.*

The trial occurred in Syracuse in Onondaga County, New York. The trial judge denied defendant's motion, made eight days before the first trial, to dismiss the indictment on the ground that the grand jury had been illegally constituted. The government urges that, under Criminal Rule 12(b) (3), 18 U.S. C., this motion was not timely made;[2]

we are not entirely free from doubt on the matter, but, in the circumstances, we think it desirable to pass on the motion's merits.

28 U.S.C. § 1865(a) reads in part as follows: "Grand and petit jurors shall from time to time be selected from such parts of the district as the court directs so as to be most favorable to an impartial trial, and not to incur unnecessary expense or unduly burden the citizens of any part of the district with jury service." [2a]

In 1914, the district court for the Northern District of New York made an order, never since modified, providing that when a stated trial term of that court is held at Syracuse, New York, the grand and petit jurors are to be drawn from Onondaga County. The Northern District contains 29 counties; on its westerly side it runs from the Canadian border on the north to almost the Pennsylvania border on the south, and on its easterly side to the southerly limits of Albany County. The defendant contends that this method of selection, employed in

2. Rule 12—see Notes of Advisory Committee—applies and requires such an objection to be raised by motion before trial.
 Rule 12(b) (3) provides that such a motion to dismiss shall be made "before the plea is entered, but the court may permit it to be made within a reasonable time thereafter." At the time when defendant pleaded, in 1951, the district court gave him thirty days in which to make motions. The motion here in question was not made until months later, on April 28, 1952. This was 8 days before his second trial.

2a. This provision derives from R.S. § 802 except for the addition of the words "grand and petit" before the word "juror." R.S. § 802 in turn derived from § 29 of the Judiciary Act of 1789, which was held applicable to both grand and petit juries. Agnew v. United States, 165 U.S. 36, 44, 17 S.Ct. 235, 41 L.Ed. 624, citing United States v. Stowell, Fed. Cas.No.16409, 2 Curt. 153.

choosing the grand jurors who indicted the defendant, violated his constitutional rights. We do not agree. See United States v. Gottfried, 2 Cir., 165 F.2d 360, 363–365. For the same reasons we reject defendant's similar contention that the trial court erred in denying defendant's challenge to the array of the petit jury.

2. *Alleged adverse publicity.*

■ Defendant, citing Delaney v. United States, 1 Cir., 199 F.2d 107, argues that he was deprived of due process because of adverse local publicity in Syracuse where the trial was held. The record contains no evidence to support that contention. Moreover, defendant specifically asked that he be tried in Syracuse.

3. *Refusal to sustain a challenge of a juror for bias.*

■ On the *voir dire* of the jurors, the defense exhausted its peremptory challenges. Prospective juror Van Denburg testified that he had formed an opinion as to the merits from what he had read of the former trial which would require some evidence to remove. The court then told the veniremen:

"You are all human beings. You have to discard your opinions and ideas the best you can and decide it solely on the evidence. I think we understand it."

Van Denburg: "Suppose evidence is brought out in this case not brought out before. Are you supposed to forget the other evidence?"

The Court: "Just listen to what comes out here."

Van Denburg: "Forget the evidence?"

The Court: "Just decide it on what you hear here."

Van Denburg: "All right."

The defense interposed a challenge, for bias, to Van Denburg "because of the opinion he has formed." The court thereupon questioned him further:

The Court: "All right, Mr. Van Denburg, you heard this discussion which is a very delicate problem. Do you have such a fixed opinion and state of mind you couldn't sit and listen to the evidence and decide the issues here fairly and impartially and squarely, or do you have such a set mind it couldn't be overcome?"

Van Denburg: "I didn't mean to create that impression to feel I would have to have additional information before changing my present opinion. I did not say it couldn't be changed."

The Court: "Do you have something in your state of mind—"

Van Denburg: "I have an idea of the situation and what my thinking is one way or the other, it could be changed by the presentation of facts."

The Court: "Can you assure me you will sit as a juror and listen to the evidence and take the law as I give it to you and lay aside the opinion you have?"

Van Denburg: "Yes, I would."

The Court: "Can you assure me of that?"

Van Denburg: "Yes, I can."

The Court: "I deny the challenge."

Mr. Barron: "Your Honor, may I ask one question of this juror? Would it require some evidence to overcome this opinion, Mr. Van Denburg?"

Van Denburg: "Yes."

Mr. Barron: "I submit, your Honor, that the defense has no burden of proof and we are not required to overcome opinion."

The Court: "I don't know as that is the law. I am going to let you examine him further. You are familiar with the Dennis case, are you?"

Mr. Barron: "Yes, your Honor, but if the witness brings into the jury box a fixed opinion that requires evidence to remove, then he

is not an impartial juror. We are not required to put the case—"

The Court: "All right, the case doesn't say that. I wasn't too sure myself, frankly. Do you have such a state of mind—it doesn't make any difference which way it is—that you could sit here impartially and listen to the evidence and go to the jury room and decide it on the evidence you hear and lay aside any fixed opinion you have? Could you do that?"

Van Denburg: "Yes, I could."

The Court: "It isn't anything fixed? You couldn't forget in your own mind?"

Van Denburg: "Just a casual opinion and knowledge I have of the case from the newspapers."

The Court: "I deny the challenge."

The remarks of the juror justified the court's ruling. In Reynolds v. United States, 98 U.S. 145, 155–157, 25 L.Ed. 244, the Court said: "The theory of the law is that a juror who has formed an opinion cannot be impartial. Every opinion which he may entertain need not necessarily have that effect. In these days of newspaper enterprise and universal education, every case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits. It is clear, therefore, that upon the trial of the issue of fact raised by a challenge for such cause the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any

other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest. No less stringent rules should be applied by the reviewing court in such a case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court. * * * In considering such questions in a reviewing court, we ought not to be unmindful of the fact we have so often observed in our experience, that jurors not unfrequently seek to excuse themselves on the ground of having formed an opinion, when, on examination, it turns out that no real disqualification exists. In such cases the manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact except in a clear case. The affirmative of the issue is upon the challenger." See also Holt v. United States, 218 U.S. 245, 248, 31 S.Ct. 2, 54 L.Ed. 1021; United States v. Dennis, 2 Cir., 183 F.2d 201, 228.

4. *Sufficiency of the evidence.*

A careful reading of the evidence convinces us that the evidence sufficed to sustain the verdict.

5. *Excluded evidence.*

 The judge committed reversible error by excluding substantial evidence which was distinctly relevant to the defense of authorization of Klock's conduct by his superior officers in the bank.[3] Such authorization, if proved,

---

3. The items improperly excluded in the instant case were in part the same and in part similar to those improperly excluded in United States v. Klock and Potter.

would here have been a sound defense. For, if Klock was not guilty, then neither was Titus, who was charged with aiding and abetting Klock. See our opinion in United States v. Klock and Potter, 2 Cir., 210 F.2d 217.[4]

Reversed and remanded for a new trial.

4. Since there must be a new trial, we think it well also to suggest that the judge avoid repetition of anything like the following remarks, addressed in the jury's presence to defense counsel when they ventured politely to point out what they considered errors in his rulings: "Are you going to insult me and challenge my integrity?" "I don't want these challenges to my rulings."