**UNITED STATES of America,**
**Appellee,**

**v.**

**Paul TITUS, Appellant,**

**Bernard Everett Klock, Leslie L. Root, Jr.,**
**and Paul Titus, Defendants.**

**No. 195, Docket 23339.**

United States Court of Appeals
Second Circuit.

Argued March 17, 1955.

Decided April 26, 1955.

Theodore F. Bowes, U. S. Atty., for the Northern District of New York, Syracuse, N. Y. (Robert J. Leamy, Sp. Asst.

U. S. Att'y., Oneonta, N. Y., of counsel), for appellee.

William W. Barron, Washington, D. C., for appellant.

Before CLARK, Chief Judge, FRANK, Circuit Judge, and GALSTON, District Judge.

GALSTON, District Judge.

This indictment charges conspiracy to misapply the funds of the Syracuse Trust Company, and accuses Klock, in substantive counts, of misapplying funds represented by specific enumerated checks, and accuses Titus of aiding and abetting such misapplications.

This is an appeal arising out of the third trial of Titus for this offense. On the first trial the jury disagreed. On the second trial he was found guilty, but the conviction was reversed for failure of the trial judge to submit to the jury the defense of authorization set up by Titus. See United States v. Titus, 2 Cir., 210 F.2d 210; United States v. Klock, 2 Cir., 210 F.2d 217.

The proof in this trial of guilt seems overwhelming, but the appellant urges a number of grounds for reversal.

First it is contended that the evidence is insufficient to support the verdict.

The indictment charges, in Count 1, that Klock, one of the defendants, was a bookkeeper employed by the Trust Company; that in January, 1950, he unlawfully misapplied funds and credits of the bank in the sum of $1,200 by causing the bank to pay out, without authority, a check dated January 20, 1950, payable to the order of Reliance Distributors, Inc. in the amount of $1,200, drawn upon the account by Titus at a time when the account of Paul and/or Ann Titus contained insufficient funds to pay the check, and that repayment thereof was not in any way secured, as Klock well knew, and that he did not charge the Titus account with the amount of the check; that he concealed the check and procured no credit or refund from the transmittor; that he converted the sum of $1,200 to the benefit of Titus, and that the said sum was lost to the bank. The same count of the indictment charges that Titus unlawfully, and with intent to injure and defraud the bank, aided and abetted Klock to misapply the said funds.

Subsequent counts, 2 to 15 inclusive, are substantially similar to Count 1, except as to dates and amounts. The appellant was found guilty on all counts, 1 to 15 inclusive.

The Syracuse Trust Company was a member of the Federal Reserve, and its deposits were insured by the Federal Deposit Insurance Corporation. Titus opened his account with that bank, as he testified, in November, 1946. At that time Klock had supervision over the bookkeepers in the regular checking account division. He testified that part of his duties "were to see that each girl was doing her work correctly, looking for any difference she may have had in her daily postings, handling the holdouts from that section, and keeping that part of the department in balance."

The evidence of Titus' guilt consisted largely of testimony given by Klock, who had pleaded guilty, and by Zinsmeister, an employee of the bank who testified to conversations with Klock and to the identification of checks and records of the bank. Another witness for the Government was Heveron, a special agent of the Bureau of Investigation, who testified as to conversations that he had with the defendant Titus on April 12, 1951. Titus admitted to Heveron that on numerous occasions Klock came to the Titus store and that during those visits Klock set up certain records for Titus. Titus told the F. B. I. agent that for setting up these records he paid Klock a sum of two or three hundred dollars, and that this payment included sales which were also handled by Klock. Roth, an accountant, another special agent of the Bureau of Investigation, testified to having met Titus on April 14, 1951 at the offices of O'Connor and Shamin, attorneys for Titus. Another special agent of the Bureau of Investigation, Charles Malone, was also present. Titus admitted at this conference that his account at the Syra-

cuse Trust Company had been overdrawn to the extent of $20,000. Roth said Titus admitted that he had talked to Klock some few days before, on April 9, 1951, to find out what to do about the outstanding checks from his account with the Syracuse Trust Company. Roth examined the books and ledger cards of the Titus account at the bank, and testified that there was a total of $989,296.79 charged against the ledger cards, which total included the checks recovered from Klock and introduced through Zinsmeister as not having been charged to the ledger cards. It was conclusively established that $376,398.99 by way of worthless checks were drawn by Titus against insufficient funds; that these checks were paid by the bank and never debited to the Titus account.

Carlson, another F. B. I. agent, also an accountant, examined the ledger cards for the Titus account. It is not necessary to repeat in detail the evidence that he gave. It related in the main to establishing the charge in respect to the check of $1,200 recited in Count 1, and the check of $981.51 in Count 2 of the indictment. Likewise he went through the remaining counts, establishing specific proof in respect to the amounts therein charged to have been unlawfully overdrawn by Titus.

■ With the testimony of these witnesses the Government developed beyond the peradventure of doubt the guilt of the defendant Titus, as charged in the first fifteen counts of the indictment.

The appellant thus fails to support his contention that the evidence is insufficient to support the verdict. As to the other alleged grounds for reversal we find none controlling.

The appellant's challenge of the composition of the petit jury was in principle disposed of in the earlier appeal, United States v. Titus, 2 Cir., 210 F.2d 210, 212.

■ There was no error in striking from the files the defendant's affidavit seeking to disqualify Judge Foley, and certainly no prejudice resulted because this trial was before Judge Brennan, and not before Judge Foley.

■ The defendant had ample time within which to prepare for trial. The very able trial counsel had been in the case since 1951. Nor is the appellant's contention of any merit that he was not permitted to discharge his trial counsel before trial had begun. The opportunity was afforded the defendant by the trial judge, and the defendant on his own volition decided to retain his counsel.

■ The trial court did not withdraw from the jury the defense of authorization. It may be noted that Klock admitted in answer to the question, "Did any officer of the bank ever authorize you to hold out those Titus insufficient fund checks in the manner which you testified to yesterday?" that no officer had so authorized him. Then again: "Q. Did you ever tell any officer of the bank that you were holding out these Titus checks in the manner that you testified to? A. No."

Significant also is the following in the examination of Klock: "Q. Were any of these Titus checks that you had in your home or the filing cabinet on April 9, 1951 ever charged up on the Titus ledger card? A. No."

It should be observed on this question of the defense of authorization that though there was no proof given by the defendant of such authorization to Klock nevertheless the trial judge gave the defendant the benefit of bringing it to the attention of the jury in the following part of his charge: "Now, Ladies and Gentlemen, of course if Klock had the authority of the bank official to pay checks upon, to pay these checks which are here in dispute and not to enter them in the bank records, then of course that authority would be a defense and there is no wilful misapplication. The defendant urges that you are to infer that authority. I don't believe there is any claim of any such direct authority. But it would have to be a policy. I don't recollect any particular evidence in that regard."

■ The objection by the appellant that the trial court acted contrary to Rule 30 of the Federal Rules of Criminal Pro-

**574**

cedure, 18 U.S.C.A. in denying the request of the appellant's counsel that his objections be taken out of the hearing of the jury, is without merit. The rule refers to objections to the charge, and counsel had, in his colloquy with the court, admitted that he was referring to requests "to the recital of the evidence." In any event, no showing of prejudice is made out by the appellant.

We conclude that the trial court committed no error in the admission or exclusion of evidence.

Affirmed.