UNITED STATES of America

v.

August Edward SCHARTNER, Jr.,
Appellant.

No. 17747.

United States Court of Appeals,
Third Circuit.

Argued Sept. 15, 1969.

Decided March 5, 1970.

As Amended on Denial of Rehearing
June 26, 1970.

472

William P. Stewart, Asst. Defender, Philadelphia, Pa., for appellant.

J. Raymond McGill, Jr., Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, KALODNER and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The appellant Schartner was convicted on each count of a four count indictment charging him with (1) entering a federally insured bank with intent to commit larceny, (2) taking $84,550 from the bank with force, violence and intimidation, (3) taking this sum with intent to steal, and (4) knowingly jeopardizing the lives of two bank employees with a gun, in violation of 18 U.S.C. § 2113(a), (b) and (d).

Schartner argues that there were prejudicial errors at his trial. The evidence showed the following: In the afternoon of July 6, 1966 the Bridesburg branch of the Girard Trust Bank in Philadelphia, Pennsylvania, was robbed of the sum of $84,550. A bespectacled young man, later identified as Schartner, entered the bank with a brown attache case and on the pretext of desiring to open a new account gained entry into the office of and an interview with Rosinski, an assistant bank manager. The intruder drew a pistol and ordered Rosinski to lead him to the bank's vault where the head teller, Harvey, was working at the time. At the robber's command Rosinski and Harvey filled the attache case with $84,550 including a number of two-dollar bait bills. After threatening the pair with death if they should attempt to seek help or sound an alarm the robber fled with his loot.

On the evening of the robbery Harvey examined photographs produced by the police at the Philadelphia police station for approximately four hours. She chose three of these as resembling the robber, stating that they "were similar to his facial description," but she did not identify any one of the three men shown in the photographs as the robber. Two days later on July 8, 1966, a police officer brought three or four photographs to the bank and Harvey picked out one which she identified as the robber. That photograph was of Schartner. On the evenings of July 7 and 8, 1966, Rosinski examined several groups of photographs at the police station. On July 8, he selected one of these which was in fact a photograph of Schartner.

The FBI obtained a warrant for Schartner and he was arrested by FBI agents on July 30, 1966 in a cabin at Lake Texoma Lodge in Oklahoma. The agents searched the cabin and found currency totalling over $45,000 including one hundred two-dollar bait bills. The day following the arrest, the FBI obtained a warrant to search Schartner's automobile standing in front of his rented cabin. A search of the automobile revealed a billfold containing $120 in currency, identification cards, and other papers.

In August 1966, Rosinski and Harvey were asked by FBI agents to attend Schartner's arraignment in a court room of the United States District Court in Philadelphia. Rosinski and Harvey were informed that Schartner would be present in the court room. Three men were sitting in the jury box and both bank officers observed the three men and then left the court room. Rosinski and Harvey independently and separately identified Schartner as the robber without any coaching by the FBI agents.

On April 7, 1967, Schartner was found guilty by a jury. On October 26, 1967, however, the trial Judge granted his motion for a new trial because of a post-trial discovery that the testimony of an alleged incriminating eye witness, Dennis James Jones, was false.

At his second trial Schartner again was found guilty on all four counts. Schartner's motions for new trial and for arrest of judgment were denied and on December 23, 1968, he was sentenced to a prison term of twenty-two years on

the fourth count, sentence being suspended on the other three counts. The appeal followed.

I. *Admission of evidence obtained by the search conducted incident to appellant's arrest.*

▉ Schartner contends first that the warrant authorizing his arrest was legally deficient as not being supported by a sufficient affidavit of probable cause as required by the Fourth Amendment, and that therefore the admission of evidence obtained by a search conducted incident to his arrest was prejudicial error.[1] We cannot agree. An affidavit or a complaint may be validly based on hearsay information. See United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The warrant was issued on a complaint executed by Whomsley, the special agent of the FBI who, with the aid of the Philadelphia police, carried on the Philadelphia investigation of the bank robbery. The complaint was as follows: "And the complainant states that this complaint is based on positive identification by the Manager of the aforeaid bank, Mr. Stephen Rosinski, and the Head Teller, Mrs. Rose Harvey, that defendant demanded money of them with a hand weapon, whereupon both witnesses were forced to turn over to the defendant $84,550 of money which was rightfully in the care, custody and control of the aforesaid bank."

▉ Specifically, Schartner argues that the complaint failed to particularize sufficiently the basis for the warrant and because of this the United States Commissioner could not make an independent determination of the existence or not of probable cause. If Schartner's arrest was illegal because of a defective warrant it would follow that the fruits of the search incident to his arrest were inadmissible. See Giordenello v. United States, 357 U.S. 480, 483, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). The Government does not challenge the basic proposition that the Fourth Amendment requires that a warrant be supported by information enabling the issuing officer to exercise independent judgment on the issue of probable cause. Johnson v. United States, 333 U.S. 10, 13–14, 68 S. Ct. 367, 92 L.Ed. 436 (1948). We point out that Whomsley's complaint did in fact allow the Commissioner to discharge the constitutional function of an independent determination of probable cause. A complaint based on hearsay must meet two tests; first, the source of the hearsay declarants' accusation must be revealed, and second, the hearsay declarants must be presumptively reliable and generally worthy of belief. See Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The hearsay complaint in the instant case meets both of these tests. Accordingly we hold that the arrest warrant was valid.

Schartner also contends that the admission of the evidence seized in the cabin was beyond the permissible scope of a search incident to arrest. As we have said, Schartner was arrested in a cabin of the Lake Texoma Lodge in Oklahoma. The Lodge consists of a main hotel-like building surrounded by numerous cabins. One agent testified that Schartner's arrest and the search of his cabin together consumed about fifteen minutes. Another agent testified that the search alone took approximately twenty-six minutes. The cabin consisted of one room, twenty-five by thirty feet, and a bathroom. Various items, some of which were introduced in evidence, were seized from a "table in the kitchen alcove", from "the dining room table", from an "open front closet", from a blue suitcase located in the closet and from a brown leather bag, the location of which in the cabin does not appear from the record. There is evidence that the search extended into closed areas. As to the search of the brown leather bag and

---

1. Various motions to suppress evidence were made by Schartner. These were denied.

seizure of its contents, one of the arresting agents stated: "When we found the bag we asked Mr. Schartner if he would please give us the keys to this bag so we could open it. He refused to give us the keys. We informed him we would have to open the bag and he refused to tell us where the keys were so we opened it." The arresting agents also broke open the blue suitcase found in the closet.

Schartner contends that upon these facts the Supreme Court's decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), announcing a new and more restrictive rule as to the constitutional limits of a warrantless search incident to arrest, requires the suppression of this evidence and that it was error to admit the seized items at trial. Prior to Chimel it was the law that officers effecting an arrest could conduct a warrantless search extending not only to the person of the one arrested but also to the premises in his "possession" or under his "control" at the time of the arrest.[2] Chimel overruled United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) and elucidated a new concept of "immediate control" much narrower than that which had existed previously. For example, Mr. Justice Stewart in Chimel, contrasting the previous rulings, stated: "There is no comparable justification, however, for routinely searching rooms other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." 395 U.S. 763, 89 S.Ct. 2040.

■ While the search at Schartner's cabin might have rendered the evidence seized therein inadmissible under Chimel, we conclude that Chimel does not apply in cases where the evidence complained of was gained from a search prior to the date of the decision in Chimel.[3] We conclude that Chimel is not to be applied retroactively. We agree with the reasoning of the United States Court of Appeals for the Second Circuit in United States v. Bennett, 415 F.2d 1113 (1969) and we think it is unnecessary for us to elaborate here on the sustaining theory so well articulated by Circuit Judge Friendly. Cf. Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). Other strong courts have made similar rulings as to the retroactivity of the Chimel doctrine. See Scott v. State, 7 Md.App. 505, 256 A.2d 384 (Md.Ct.Spec.App.1969). We conclude therefore that the evidence seized in the cabin and from Schartner's immediate possession was admissible.

The FBI agents obtained a warrant for the search of Schartner's automobile but Schartner contends that because the search of the cabin was illegal, which, in his view, led to the search of the automobile, the search of the automobile was illegal. Since we have found the search of the cabin to have been a legal search, it follows that the search of the automobile was permissible and the evidence obtained therein admissible. There is no sound ground for attacking the search warrant.

II. *Trial court's permitting the Government to reopen its case after the close of all evidence and arguments to the jury to allow proof of an essential element of the crime charged.*

■ Schartner contends next that the trial court erred in refusing appellant's motion for a judgment of acquittal at the close of all evidence. After the denial of this motion and after completion of arguments to the jury, counsel for

---

**2.** The prior rulings are set out in *Chimel, supra,* at 760, 89 S.Ct. 2034.

**3.** It is well settled that a Court of Appeals is free in appropriate situations to give non-retroactive effect to a decision of the Supreme Court. See Gaitan v. United States, 317 F.2d 494 (10 Cir. 1963); United States ex rel. Linkletter v. Walker, 323 F.2d 11 (5 Cir. 1963); Sisk v. Lane, 331 F.2d 235 (7 Cir. 1964), and United States, ex rel. Angelet v. Fay, 333 F.2d 12 (2 Cir. 1964).

the Government declared his desire to confirm that there had been a stipulation that the bank robbed was federally insured, federal insurance being an essential element of the crime charged. The record indicates that the trial Judge at this point was also under the impression that this fact had been stipulated previously. After defense counsel denied the existence of such a stipulation, the trial Judge granted the motion of the United States to reopen its case to supply proof of this missing element of the offense. Thereafter defense counsel finally agreed to stipulate that the bank was federally insured.[4] We have stated in the past in similar circumstances: "It is unnecessary for us to consider the academic question whether at the time, the government originally rested its case the defendants' motion for directed verdicts should have been granted." United States v. Maggio, 126 F.2d 155, 158 (3 Cir. 1942). Schartner was no more prejudiced by the establishment of federal insurance at this particular point in the trial rather than if this operative fact had been stipulated earlier. Accordingly, we find no abuse of discretion in the trial Judge's denying appellant's motion for a judgment of acquittal and allowing the Government to reopen its case for this limited purpose. See United States v. Webb, 398 F.2d 553, 558 (4 Cir. 1968); Morgan v. United States, 380 F.2d 686, 703 (9 Cir. 1967); Lucas v. United States, 343 F.2d 1, 2–3 (8 Cir. 1965). Cf. Maggio, *supra*, and Massey v. United States, 358 F.2d 782, 786 (10 Cir. 1966).

### III. Schartner's arraignment identification by Government witnesses.

■ As stated above, the Government's only two eye witnesses to the crime, Rosinski and Harvey, identified Schartner during the course of a Government-arranged pre-trial confrontation at his arraignment in a court room of the United States Court House in Philadelphia. Both witnesses testified that they had recognized Schartner as soon as they had entered the court room while he was sitting in a jury box with two other men. Although Rosinski and Harvey were informed that Schartner would be in the court room the witnesses did not disclose their respective identifications until each identification had been made. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) held that the absence of counsel at a pretrial lineup violates the Sixth Amendment. While Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), held that *Wade* and *Gilbert* are prospective only, it was stated that a pre-trial confrontation may violate due process if under "the totality of circumstances" the confrontation is "unnecessarily suggestive and conducive to irreparable mistaken identification." 388 U.S. at 302, 87 S.Ct. at 1972. Under the totality of circumstances in the case at bar, there was no violation of due process. See United States v. Lipowitz, 407 F.2d 597, 599 (3 Cir. 1969); Dade v. United States, 132 U.S.App.D.C. 229, 407 F.2d 692 (1968). The facts of *Dade* are on all fours with those of the instant case.

### IV. As to the sufficiency of Count IV of the indictment and the proof thereunder.

Schartner contends that the trial Judge erred in refusing his motion for acquittal on Count IV of the indictment and in charging the jury on that count. Count IV charges that Schartner "did knowingly and unlawfully put in jeopardy by use of a dangerous weapon, to wit: a gun, Mr. Stephen Rosinski, Manager and Mrs. Rose Harvey, Head Teller. * * *" Schartner argues that this count is defective because it does not reveal what was "put in jeopardy".

■ The test for whether an indictment is sufficiently particular is (a) whether the defendant could in a subse-

---

4. Notes of Testimony at 917–28.

quent prosecution plead former acquittal or conviction and (b) whether it enabled him to prepare his defense. See Russell v. United States, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). 18 U.S.C. § 2113(d), which underlies Count IV, actually defines two separate crimes. It provides for the punishment of one who in the course of a bank robbery either "assaults any person, or puts in jeopardy the life of any person * * *." The allegation of Count IV stating that Schartner "unlawfully put in jeopardy" Rosinski and Harvey reasonably can be held to refer to putting in jeopardy the lives of Rosinski and Harvey. Bearing in mind that Schartner made no challenge to the indictment in the court below it is difficult to conceive how he could have been hampered in the preparation of his defense.[5] To determine whether the indictment enables the defendant to plead prior conviction or acquittal, we can consider the whole record. Heaton v. United States, 353 F.2d 288 (9 Cir. 1965). The indictment in the case at bar, as supplemented by the evidence adduced at trial and by the court's charge,[6] is sufficient to enable defendant to plead former conviction.

We also find, contrary to Schartner's assertion, that there was sufficient evidence from which the jury might infer that the lives of Rosinski and Harvey were placed in danger by a dangerous weapon. Rosinski testified that he saw Schartner with a gun, that he was threatened with a gun, that Schartner brought the gun into the vault where Harvey was working, and that Schartner threatened to kill both of them should they sound an alarm.[7] There need be no direct evidence that the gun was loaded. See United States v. Roach, 321 F.2d 1, 5 (3 Cir. 1963).

V. *Reference to Schartner's prior criminal record.*

Schartner contends also that the trial court committed reversible error in failing to strike a reference suggestive of his prior criminal record. On the cross-examination of Harvey, defense counsel read from part of a written account of a prior police interview of Harvey. On re-direct examination of the witness, the Government's counsel began to read the balance of the statement when Schartner's counsel objected. During a short discussion with the trial Judge as to the merits of the objection counsel for the United States said that it was the law that "when counsel refers to part of a former statement, I can read the rest of that statement * * *". When the trial Judge then stated his intention to overrule the objection, Schartner's counsel stated, "I will withdraw the objection." Government counsel then proceeded to read the statement, including in his recitation that Harvey "selected a photograph of August Edward Schartner, Dauphin County Prison D 19233, * * *". Schartner's counsel moved to strike this reference. His motion was denied.

The withdrawal of the original objection constituted a waiver precluding Schartner's counsel from later moving to strike. See United States v. Knox Coal Co., 347 F.2d 33, 44 (3 Cir.), *cert. den. sub nom.,* Lippi v. United States, 382 U.S. 904, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965); Good v. United States, 378 F.2d 934, 936 (9 Cir. 1967) (per curiam). This waiver must be deemed intelligent, being preceded by opposing counsel's statement that he could *"read* the *rest* of the statement". (Emphasis added.)

It is contended by the United States that since the reference to Schartner's previous criminal charge was not emphasized and was in a sense oblique it did not constitute fundamental error affecting Schartner's constitutional rights. See Lyda v. United States, 321 F.2d 788, 791 (9 Cir. 1963) and United States v. Henderson, 185 F.2d 189, 192 (7 Cir. 1950). With this we

---

5. See United States v. O'Brien, 174 F.2d 341, 346 (7 Cir. 1949).

6. Notes of Testimony at 939–40.

7. Notes of Testimony at 60–61, 64–65, 78–80, 104, 109, 111, 350.

are in accord albeit somewhat reluctantly. But the prosecuting attorney should not have been permitted to read that portion of the statement proving Schartner's prior conviction and the trial Judge should have prevented such an occurrence. If it were not for the peculiar circumstances surrounding this incident we would hold it to be reversible error.

## VI. *Prosecution's closing argument.*

Schartner asserts that the following remarks by the prosecuting attorney in closing argument, all objected to by him, were improper and prejudicial:

> "Ladies and gentlemen of the jury, when this trial commenced about one week ago, I said the Government would prove the guilt of the defendant beyond any reasonable doubt. I believe that the Government has done what it set out to do."
>
> \*   \*   \*   \*   \*   \*
>
> "\*   \*   \*   I can tell you that if I knew of any witness who could elaborate at all, no matter what they had to say \*   \*   \*."
>
> \*   \*   \*   \*   \*   \*
>
> "I wish I could be as eloquent or eloquent enough to do justice to the testimony the Government has presented here. I say it and I have said it before and I will say it again, it is just overwhelming.
>
> "I have a duty to protect the innocent and to see that the guilty do not escape. *I say to you with all the sincerity I can muster that if you do not convict the defendant, the guilty will escape.*" (Emphasis added.)
>
> \*   \*   \*   \*   \*   \*
>
> "Members of the jury, this is a man [*sic.*]—is this the way an honest man would act? Is this what you would expect if you were on trial in this case?"

Schartner argues that these statements "clearly involve an expression of counsel's opinion on the question of defendant's guilt." This is certainly a fair characterization of some of them. However, although we cannot condone prosecutorial expression of personal belief in an accused's guilt,[8] such expression is not reversible error when the remarks fairly construed refer only to belief based on the evidence and not to an opinion formed from facts not in evidence. See United States v. Meisch, 370 F.2d 768, 773 (3 Cir. 1966); Gradsky v. United States, 373 F.2d 706, 710 (5 Cir. 1967); Orebo v. United States, 293 F.2d 747, 749 (9 Cir. 1961), *cert. den.,* 368 U.S. 958, 82 S.Ct. 402, 7 L.Ed.2d 389 (1962). We believe that the first and third remarks set out above are properly construed as belief based on the evidence.

The prosecutor's statement that "I can tell you that if I know of any witness who could elaborate at all, no matter what they had to say," appears to have been directly provoked by Schartner's counsel. During the trial, Schartner's counsel attempted to interject into the trial the figure of Dennis James Jones, referred to at an earlier point in this opinion. As mentioned earlier Jones was a Government witness at Schartner's first trial, and it was upon the basis of the discovery that his testimony had been false that a new trial was granted. Schartner's counsel argued to the jury that they should draw an inference favorable to his client from the failure of the United States to call Jones. The statement of the Government's counsel apparently was intended to rebut this insinuation that the United States was attempting to hide a witness, and in these circumstances this statement was not reversible error. See Gray v. United States, 394 F.2d 96, 101 (9 Cir. 1968) and Green v. United States, 282 F.2d 388, 391 (9 Cir. 1960), *cert. den.,* 365 U.S. 804, 81 S.Ct. 469, 5 L.Ed.2d 460 (1961).

Another argument to the jury challenged by Schartner, as we have stated, was the prosecuting attorney's rhetorical question "\*   \*   \* is this

---

8. See Judge Freedman's concurring opinion in United States v. Meisch, 370 F.2d 768, 775 (1966).

the way an honest man would act?" It is contended that this might have been interpreted by the jury as comment on Schartner's failure to testify, thus requiring the reversal of his conviction. See Griffin v. California, 380 U.S. 609, 610–612, 85 S.Ct. 1229, 14 L.Ed.2d 106, *rehearing den.*, 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965). However, taken in context, this statement can be interpreted more readily to refer to Schartner's failure to produce a witness known only to him, a permissible inference. See Pennewill v. United States, 122 U.S.App.D.C. 332, 353 F.2d 870 (1965). Schartner's counsel had argued to the jury that the large sum of money seized from Schartner at the time of his arrest could be explained as readily by his having won it in a "crap game" as by his having stolen it from the bank. In rebuttal and immediately prior to the reference to Schartner's honesty, the prosecuting attorney had been commenting on Schartner's failure to produce a witness to corroborate the theory that the money might have been derived from gambling winnings. Since the statement is at worst ambiguous, the trial court's instruction to the jury not to draw any inference from Schartner's failure to testify was sufficient to negate any possible prejudice. See United States v. Nasta, 398 F.2d 283, 285 (2 Cir. 1968).

▮ There remains for our consideration the Government attorney's remarks that "I have a duty to protect the innocent and to see that the guilty do not escape. *I say to you with all the sincerity I can muster that if you do not convict the defendant the guilty will escape.*" (Emphasis added.) In respect to this remark Schartner's counsel not only objected but also requested the withdrawal of a juror. We cannot countenance these remarks. Not only do they imply a personal belief in Schartner's guilt, but they also directly invite the jury to rely on the Government attorney's experience in prosecuting criminals generally and on the Government attorney's "sincerity". Neither the prosecutor's general experience nor his moral integrity has anything to do with the evidence in the case. In these respects these statements differ from and are more prejudicial than the unadorned statement of belief which we grudgingly approved in *Meisch, supra.*[9] We hold that they constitute reversible error. *Cf.* United States v. Gambert, 410 F.2d 383 (4 Cir. 1969).

VII. *Failure of trial Court to afford Schartner's counsel opportunity to object to the charge outside of the jury's hearing.*

Schartner contends that he was denied a fair trial by the judge's refusal to let him state his objections to the court's jury charge at side bar as required by Rule 30, Fed.R.Crim.Proc., 18 U.S.C.[10] This contention has merit and also warrants our reversing the judgment of conviction in the court below.

▮ After the close of all evidence there was a presummation-instruction conference between counsel and the Judge in chambers. Points for charge were submitted by both parties. Some were granted; some were refused; and certain exceptions were taken by Schartner's counsel. The Judge and counsel then returned to the courtroom and the Judge delivered his instructions to the jury. At the close of the charge with the jury still in the box the Judge said to counsel: "Now, gentlemen, is there anything that either the Government or the defendant requests me to charge the jury?" Schartner's counsel said:

---

9. In *Meisch, supra*, 370 F.2d at 773, the prosecutor made the following opening statement: "And *I am convinced*, as I am sure you will be when you hear the evidence and see it presented before you, that there will be no question but that defendant * * * is guilty of the crime charged." (Emphasis added.)

10. Rule 30, Fed.R.Crim.Proc. 18 U.S.C., provides in pertinent part: "Opportunity *shall* be given to make the objection [to the charge] out of the hearing of the jury and, on request of any party, out of the presence of the jury." (Emphasis added.)

"Yes, sir, if the Court please." The prosecutor said that he had no requests, and Schartner's counsel next stated: "I have just a few *minor* comments to make, sir." and *"May I do it at side bar?"* (Emphases added). To this request the court answered, "No.", stating no reason for his refusal. Schartner's counsel then asked, "No?", and, receiving no answer from the Judge to his question, next objected to certain instructions not relevant here. Schartner's counsel did not object to the failure of the court to give him an opportunity to state his comments out of the hearing of the jury but to require Schartner's counsel, whose request to make an objection out of the hearing of the jury has been refused, to object in the hearing of the jury stating that his objection was to the failure of the court to permit him to make an objection out of·the hearing of the jury seems to constitute a complete vitiation of Rule 30.

The refusal of the Judge to obey Rule 30 was, of course, erroneous. The Government does not contend to the contrary but argues that the error was harmless, stating that because of the "tenor" of Schartner's counsel's objections Schartner could not have been adversely affected. The contention is irrelevant for there is no showing on the record as to what Schartner's counsel's comments would have been had he been permitted to make them. The Government's counsel misconceives the function of Rule 30.

Because of Rule 30's explicit and mandatory direction to trial courts there are relatively few decisions dealing with a breach of the rule. The courts which have dealt with the problem demonstrate a difference of approach. Some decisions have held or indicated that the trial court's failure to comply with Rule 30 is not reversible error unless the defendant demonstrates he has been prejudiced thereby. See Sultan v. United States, 249 F.2d 385, 388 (5 Cir. 1957); United States v. Titus, 221 F.2d 571, 573–574 (2 Cir. 1955). Other cases assert that non-compliance with the rule warrants reversal unless it appears affirmatively that the defendant was not prejudiced. See Hodges v. United States, 243 F.2d 281, 283–284 (5 Cir. 1957); Lovely v. United States, 169 F.2d 386, 391 (4 Cir. 1948). Finally, at least one decision indicates that a trial court's failure to abide by the terms of Rule 30 demands automatic reversal. Hall v. United States, 378 F.2d 349 (10 Cir. 1967).

■■■ In United States v. Fontana, 231 F.2d 807, 809 (3 Cir. 1956) we accepted in dictum the first of the three positions set out above, namely, that there should be no reversal on Rule 30 grounds absent demonstrable prejudice. Presently reviewing this issue, however, we conclude now that there should be reversal for non-compliance with Rule 30 even where the defendant cannot affirmatively prove prejudice. Rule 30, as we have indicated, was designed to avoid subtle psychological pressures upon the jurors which would arise if they were to view and hear defense counsel in a posture of apparent antagonism toward the trial judge.[11] See *Hodges, supra,* 243 F.2d at 283–284; *Lovely, supra,* 169 F.2d at 391. *Cf. Hall, supra,* 378 F.2d at 350. These pressures would be largely imperceptible, and it would be very difficult for a criminal defendant to prove their presence in a particular case. Consequently, to insure the proper administration of criminal justice in accordance with the policies embodied in Rule 30 we hold that the fact of the trial court's failure to afford Schartner's counsel the opportunity which he requested to object to the charge out of the hearing of the jury was prejudicial

---

[11]. The fact that Schartner's counsel referred to his proposed comments as "minor" does not derogate from Schartner's position. If counsel have disagreements with the trial judge in the presence of the jury the wise advocate in the presence of the jury would indeed describe those differences as *minor*. Every trial judge and trial lawyer is aware of jurors' sensitivity to the attitudes of counsel in their disagreements with the trial judge.

error unless it be demonstrable on an examination of the whole record that the denial of the right did not prejudice Schartner's cause. Such a showing cannot be made on the present record. The decision in Bihn v. United States, 328 U.S. 633, 638, 66 S.Ct. 1172, 90 L.Ed. 1485 (1946), though not on all fours in its circumstances with those of the instant case, is, we think, persuasive as to the result we should reach here.

For the reasons stated the judgment will be reversed and the case will be remanded for proceedings consistent with this opinion.

KALODNER, Circuit Judge (dissenting):

I would affirm the Judgment of Sentence for the reasons so well stated by District Judge Body in his Opinion and Order denying the appellant Schartner's motions for a judgment of acquittal or for a new trial.