**UNITED STATES of America**

v.

**Harold CEPHAS.**

**Crim. No. 73–311.**

United States District Court,
E. D. Pennsylvania.

March 5, 1974.

---◆---

Robert E. J. Curran, U. S. Atty., Jeffrey M. Miller, Esq., Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Barry H. Denker, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Harold Cephas was tried and found guilty by a jury on each of three counts of an indictment charging him with the knowing and unlawful possession of four checks that had been taken from an authorized depository for mail matter, 18 U.S.C. § 1708, and the forging of United States checks, 18 U.S.C. § 495. Defendant has filed a motion for a new trial pursuant to Fed.R.Crim.P. 33, and in the alternative for a judgment of acquittal under Fed.R.Crim.P. 29. A careful and thorough review of the evidence presented during trial in light of the questions raised by defendant's post-trial motions has convinced the Court that there exists no reason to disturb the jury's verdict. Accordingly, defendant's motions will be denied.

The Government adduced the following facts at trial: Robert Mooney, a former manager of the Central Penn National Bank, testified that on March 7, 1973, while working at Central Penn's branch office located at 16th and Market Streets in Philadelphia, he had a conversation with one Ann Marie Gordon concerning the deposit of certain checks into Miss Gordon's personal account.

Mr. Mooney stated that at this time Miss Gordon was in possession of four checks and that he authorized the deposit of three of these checks into her account.[1]

Ann Marie Gordon then testified that she had received the checks from Harold Cephas. At the time the checks were given to Miss Gordon, the defendant was known to her as Cephas Byrd. The witness testified that she first met the defendant while being interviewed for a part-time job at his office located at 1022 Chestnut Street. Miss Gordon was later contacted by Cephas in March, 1973, at which time the defendant transferred the four checks to her and requested that she deposit the checks into her checking account. The defendant explained to Miss Gordon that he had received the checks in the course of certain business transactions and that it was necessary for the checks to be deposited in her account in order to facilitate clearance of such checks. Her testimony indicated that she was to receive one-third of the face amount of the checks deposited. This payment for services rendered would be realized by her issuing to Cephas a personal check made to the order of "Dynamite" or "Cash" for two-thirds of the value of the check deposited into her account.[2] The witness testified on cross-examination that "Dynamite" was an individual whom she had met at Cephas' office.

The next witness for the Government was Special Agent Michael Maddaloni of the United States Secret Service. The agent testified that he obtained handwriting exemplars from the defendant on March 26, 1973, at the mid-city office of the Secret Service. The witness stated that Cephas was informed of the Government's interest in obtaining sam-

---

1. Counsel stipulated that these four checks were recently stolen from the United States mails and that two of the checks were in fact forged.

2. Ann Marie Gordon was arrested in connection with this case for possession of stolen mail. She was formally charged with delay of mail and tried before the United States Magistrate as a petty offender where she pleaded guilty and was put on probation.

ples of his handwriting and that he thereafter appeared voluntarily at the agent's office. After being formally advised of his *Miranda* rights, the defendant signed the official waiver form and then submitted handwriting exemplars of signatures for two hours.

Robert A. Cabanne, a handwriting expert and an employee of the Postal Inspection Service, testified that an analysis of the handwriting exemplars submitted by Cephas and the forged signatures on the stolen checks revealed strong similarities between Cephas' writing and the endorsements on the stolen instruments.[3]

The Government then rested its case. However, the following morning, before any additional evidence was presented by either party, the Government petitioned the Court for leave to reopen the case to present a previously unavailable witness. After hearing argument on the motion, the Court granted the Government's request to reopen. Richard "Dynamite" Foreman then testified that during the early part of 1973 he and Harold Cephas obtained stolen checks from drug addicts and caused them to be deposited into various bank accounts registered to third persons. "Dynamite" corroborated the testimony of Ann Marie Gordon in regard to her receipt of the one-third share of the proceeds.

The defendant did not testify. The jury deliberated for approximately one hour and found the defendant guilty as to all three counts of the indictment. Strong factual basis existed from which the jury could conclude that the defend-

ant Harold Cephas was guilty beyond a reasonable doubt of the offenses charged.

The defendant contends that the trial court erred in granting the Government the right to reopen its case to enable Richard Foreman to testify. A motion to reopen is addressed to the sound discretion of the trial court. United States v. Wilcox, 450 F.2d 1131, 1143 (5th Cir. 1971); United States v. Duran, 411 F.2d 275, 277 (5th Cir. 1969). In the case at bar, the decision permitting the reopening of the Government's case was based principally on the Court's belief that the introduction of Foreman's testimony at that juncture of the proceedings was no more prejudicial to the defendant's position than if it had been presented earlier in the proceedings. The Government rested at the close of the second day of trial and immediately at the beginning of the trial on the following morning requested permission to reopen. The defendant had not yet presented any evidence on his behalf and had ample opportunity to cross-examine the Government's witness. See, United States v. Schartner, 426 F. 2d 470, 475 (3rd Cir. 1970).

Furthermore, the record indicates that the Government made numerous efforts to assure the presence of the witness in court. The witness, in turn, had promised to appear but failed to do so until the Government had closed its case. Under all the circumstances, it would have been improper and unjust for the Court to have denied the Government's request to reopen the case.

3. The defendant objected to the expert's opinion on the ground that the handwriting exemplars were obtained in violation of the defendant's constitutional rights. The Court conducted an evidentiary hearing, out of the presence of the jury, to determine whether the exemplars were voluntarily given. After hearing the testimony of the defendant and Postal Inspector Riley, the Court ruled the evidence admissible.