Joseph A. PEEL, Jr., John Joseph Crane, Robert Bernard Sills, Robert Zane and Herbert Gilmore, Appellants,

v.

UNITED STATES of America, Appellee.

No. 20003.

United States Court of Appeals Fifth Circuit.

May 8, 1963.

Rehearing Denied June 15, 1963.

Harry W. Fogle, St. Petersburg, Fla., E. Coleman Madsen, Stewart D. Allen, Louis M. Jepeway, Miami, Fla., Jepeway & Gassen, Miami, Fla., for appellants.

Edward W. Boardman, U. S. Atty., Miami, Fla., Arnold D. Levine, Asst. U. S. Atty., Tampa, Fla., for appellee.

Before TUTTLE, Chief Judge, and JONES and BELL, Circuit Judges.

TUTTLE, Chief Judge.

These are separate appeals on behalf of the five appellants who were tried and convicted in the Southern District of Florida for violating the anti-fraud provisions of the Securities Act of 1933, 15 U.S.C.A. § 77q(a), the Mail Fraud Statute, 18 U.S.C.A. § 1341, and the conspiracy provisions of the criminal Code, 18 U.S.C.A. § 371. A sixth alleged conspirator, Holzapfel, named in the indictment, was granted a continuance and severance for trial. Certain counts of the indictment and certain overt acts of the conspiracy count were dismissed on motion of the Government prior to the submission of the case to the jury. The jury then found the appellants guilty on all nine counts submitted to them.

The grounds of the appeal may be divided generally into three categories. The first, applicable to all the appellants, is their contention that the indictments and convictions were based on evidence which was obtained by the Government as the fruits of an illegal seizure. The second is the contention, made separately, on behalf of all except Peel, that the evidence was insufficient to warrant submission of their respective cases to a jury. The third is based on alleged errors of the trial court having to do with overruling objections to the introduction of testimony and on other actions of the trial court.

We deal first with the contention of the defendants that the trial court erred in not suppressing, and in not excluding from evidence, the books and records of Insured Capital Corporation, the corporate vehicle through which the Government sought to prove the defendants carried on their fraudulent scheme. These books and records were obtained from the office of Insured Capital Corporation in Orlando, Florida, where they

were in the formal custody of a Miss Edminson, who was the Secretary-Treasurer of the corporation. The record made before the trial court on the motion to suppress, and in support of subsequent objections to the introduction of the records in evidence, shows that none of the appellants was an officer or director of the corporation at the time the records were obtained. Evidence which both the trial court and the jury could believe tended to prove that three persons, Peel, Holzapfel and one Miles, who testified on behalf of the Government and who was named as a co-conspirator, but not as a joint defendant in the prosecution, were the principal operators of the business that had been transacted at the office of Insured Capital Corporation. There was also evidence that Sills and Crane had both been engaged under the direction of the first named three persons in carrying on certain of the functions of the business, and that Zane and Gilmore had been present in Orlando or the office of the corporation only once or twice and held no office or position with the company.

In this state of affairs, the County Solicitor of Orange County, Florida, acting under a Florida statute, Section 32.20, F.S.A.,[1] caused a subpoena duces tecum to be served on Miss Edminson to produce all of the books, ledgers, stock certificate books, bank records, and all other documents relating to the operation of Insured Capital Corporation. Miss Edminson complied with this subpoena and turned the corporation's books over to the state officer without demur or complaint. These records were retained in the office of the County Solicitor for approximately a year and a half without any demand being made for their return or any effort being made by the corporation, any of its officers, or any of the appellants seeking a return of the books. It does not appear that there was any office of the corporation maintained

thereafter to which the books could be returned, or that there was any officer of the corporation who was interested in receiving them.

During the period of their custody by the County Solicitor's office, they were made available to investigators from the Securities & Exchange Commission and other federal agencies. Based at least in part on information obtained from the records, indictments were drawn and presented to the Federal Grand Jury, charging these appellants and Holzapfel with the offenses on which they have now been convicted. The books and records were actually subpoenaed by the United States Attorney a short time before the trial, after they had been physically surrendered by the County Solicitor's office to the United States Attorney's office for use on the trial.

Appellants contend that the acquisition of the records in this manner was an illegal seizure in violation of the Federal Constitution, and that under the principle announced in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, and Henzel v. United States, 5 Cir., 296 F.2d 650, a decision by this Court, they have sufficient standing as "aggrieved persons" to have the documents suppressed when sought to be used against them.

It is clear that the Jones case, while greatly relaxing the requirement as to the interest an accused must have in order to have standing to attack an illegal search or seizure, does not cover the factual situation such as here before us. In Henzel v. United States, this Court found that where a Federal Investigating Officer, by agreement with a state court receiver of a corporation which was wholly owned and wholly operated by the accused, obtained delivery of all of the corporation's and some of the accused's personal papers in an investigation that was being conducted against the accused, the seizure of the papers was illegal and

---

1. "To have process—The county solicitor is allowed process of his court to summons witnesses to appear before him in or out of term time, at such convenient places and time as may be designated in the summons to testify before him as to any violation of the criminal law upon which they may be interrogated."

the accused had adequate standing to attack the seizure. In arriving at this conclusion, however, this Court made the following caveat:

"This is not to say that every employee of a corporation can attack the illegal seizure of corporate property if the fruits of the search are proposed to be used against him. Each case must be decided on its own facts. We only hold that, under the facts presented here, the appellant had a sufficient interest in the property seized and premises searched to enable him to challenge the propriety of the Government's conduct under Rule 41(e)."

Here the subpoena duces tecum ran to the corporation and was served on the Secretary-Treasurer, the only person in charge of the corporation at the time of service. Appellants did not allege in the trial court that this acquisition of the records by the County Solicitor's office was itself illegal under the laws of the state of Florida. Nor did they allege that the Florida statute authorizing it violated the Federal Constitution. They do here in the Court of Appeals for the first time seek to attack the legality of this seizure by the state officials. Nevertheless we do find that the trial court, in passing on the motion to suppress, made a finding to the following effect:

"The property in controversy was possessed by an official of the state of Florida pursuant to legal process. The Court further finds and holds that the property thus seized was obtained in (sic) the possession of officials of Orange County, Florida, until it was delivered to the United States Securities & Exchange Commission for use in the prosecution of this case, and that such property is now lawfully in control and possession of the United States Attorney for this District."

Thus it appears that for a period of more than a year the County Attorney's office was in possession of the papers, subject to the right of any person having a legal interest in them to seek their return; during this time the corporation ceased operating, if in fact it had ever been operating in the true sense of the word, and during the entire period of time no persons showed the slightest interest in these papers or their custody. During this period, they were inspected by the Government agents and subsequently subpoenaed for use on the trial. We think we do not come to the question whether these appellants had standing to attack the seizure, because we find nothing in these circumstances that constitutes an illegal seizure even as to the corporation itself. As the proper custodian of the records of the corporation, Miss Edminson had a right to act on behalf of the corporation to surrender the records to a public official on proper request, either with or without a formal subpoena duces tecum. Such surrender would be binding on the corporation. It has long been held that while a corporation is protected by the illegal search and seizure provisions of the Fourth Amendment, Silverthorne Lumber Co., Inc. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, that very case recognizes that a corporation's papers, unlike those of an individual who is to be prosecuted, are subject to subpoena. In commenting on Linn v. United States, 7 Cir., 251 F. 476, the Supreme Court said:

"In Linn v. United States * * * it was thought that a different rule applied to a corporation, on the ground that it was not privileged from producing its books and papers. But the rights of a corporation against unlawful search are to be protected *even if the same result might have been achieved in a lawful way.*" (Emphasis added)

Clearly the lawful way of achieving this result was by issuing a subpoena to cause the corporation's books to be produced. This is the basis of the decision in Linn v. United States. See also United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 and Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652. Both of

these cases explicitly deal with the right to subpoena a corporation's books, even though such books may tend to incriminate an officer or other person connected with the corporation.

■ There was, of course, available to the corporation the right to move to quash the subpoena, a matter to be tried by the Florida court before complying with the subpoena. See Vann v. State, Fla., 85 So.2d 133. The availability of this right to a hearing before compliance satisfies the requirements of due process.

■ We next turn to the contentions by the several appellants that the evidence is not sufficient to warrant their conviction. We have carefully read the record references dealing with the testimony by which the Government seeks to tie Zane and Gilmore into the illegal acts. It is clear that the jury could believe that Peel, Holzapfel and Miles had several conversations with these two appellants in their Miami office, and that together they worked out the plan which was actually put into effect—that is, that a company would be set up which would purport to sell its promissory notes to the investing public, which notes would bear interest at 8% and which purported to be secured by valid loans held by the company representing automobile or furniture chattel mortgages or purchase money notes, whereas in fact all of the proceeds from the sale of the notes by the corporation would be divided among the participants of the scheme. Moreover, we think it plain that the jury could believe testimony to the effect that substantial sums were actually paid for the benefit of Zane and Gilmore to their nominee, Mr. Bobbs Autos. Appellants attack the testimony dealing with the association of Zane and Gilmore with the operation on the ground that it was given substantially by a single witness, Miles, who was an admitted participant in the fraudulent transaction. While this circumstance leaves it open to the jury to view the testimony with skepticism, it does not destroy its weight or sufficiency once it is accepted as true by the jury. Once the trial court charged the jury

adequately with respect to accomplice testimony, the jury could base its conviction entirely on the testimony of such accomplice. Lyles v. United States, 5 Cir., 249 F.2d 744. Moreover as to part of Miles' testimony, there was corroboration. Gilmore and Zane were shown to have at least some interest in purchasing of the furniture for the Orlando operation from a furniture dealer in Miami. Miss Edminson testified that they came to the Orlando office "once or twice", that they "came in early one morning and left after dinner," and that they talked with Miles and Crane, Sills and Peel. Furthermore, one of the checks drawn payable to Mr. Bobbs Autos, appears to have been endorsed by Zane. We conclude that the jury's verdict finding these two appellants participants in the crime was amply supported.

■ Looking next at the evidence seeking to implicate Sills and Crane, we find that in the latter period of the operation Crane was actually president of the company at a time when the investors were being bilked out of their so-called investments. Moreover the books and records of the corporation show that from March, 1960, to September, 1960, checks for $148,000 were made payable to Crane. Sills was a salesman whose only defense seems to have been that in making his sales he did not know that the corporation was a complete fraud. He used the names of Miles and Crane on some occasions. The fact that Sills himself participated in the false representations to some of the investors and, for substantial commission, caused substantial sums to be invested in the company which were thereafter used in a manner inconsistent with the representations brings him, as does the testimony against Crane, within the language of a recent case of this Court. We believe that the jury might well have believed, as we stated in Sherwood v. United States, 5 Cir., 300 F.2d 603, 605, that it "[was] inconceivable that he did not know anything about the stock he and his salesmen were selling, especially in view of the fact that Continental stock was virtually the only stock

they were selling for an eight or nine month period."

Appellant Peel does not contend that there was not sufficient evidence on which the jury might find him guilty of the crimes charged. The investors' testimony, together with that of Miles, clearly proves that the Government's main contention with respect to the fraudulent transaction and the use of the mails pursuant thereto, as well as the conspiracy, were sufficiently proved to go to the jury as to all defendants.

We have carefully considered the contentions of Sills and Crane that the trial court deprived them of a fair trial by reason of "inflammatory and prejudicial statements." We conclude that appellants have made no such showing as this Court referred to in Kowalsky v. United States, 5 Cir., 290 F.2d 161, where we said that with respect to such an attack there must be a "clear showing * * * that the conduct was such as to carry prejudice with it. * * * [T]here must be something more to justify a retrial than a mere suspicion or feeling that prejudice may have resulted from this source. It must appear plain and clear." In this long trial, the trial court showed no leanings which could reasonably be calculated to prejudice either the accused or the Government.

Equally without merit is the contention made by Sills and Crane that they were brought into the courtroom on the first day, prior to the commencement of the trial, with handcuffs on. The trial court sought to ascertain whether any of the jurors observed anything of this nature, and this investigation failed to show any of them noticed their entrance at all and thus failed to show any prejudice to the appellants.

The contention on Peel's behalf that he was prejudiced by an inadvertent remark during argument of counsel for appellants Crane and Sills to the effect that Peel and Sills had not testified, does not warrant a determination by this Court that Peel was prejudiced by such remark which was inadvertently made by counsel for a co-defendant. The court took immediate and prompt action to correct the error. The case is quite different from De Luna v. United States, 5 Cir., 308 F.2d 140.

We have considered the other contentions made by the appellants but find that there is no merit in any of them. The judgment of the trial court is, therefore,

Affirmed.