**UNITED STATES of America**

**v.**

**James HAMILTON.**

**Crim. No. 70–233.**

United States District Court,
W. D. Pennsylvania.

Feb. 26, 1971.

**1316**

Henry G. Barr, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Jon C. Botula, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

Defendant, James Hamilton, was convicted of two counts of transporting in interstate commerce forged securities, i. e., two Travelers Express Money Orders, in violation of Section 2314 of Title 18, United States Code. He moves for a new trial on these grounds:

1. That the verdict was against the evidence, the weight of the evidence and the law;

2. That it was error to permit an agent of the Federal Bureau of Investigation, who later testified as a witness, to be present at the counsel table during the selection of the jury;

3. That the Court erroneously permitted the Government to introduce evidence of the general reputation of the defendant without the same having been placed in issue; and

4. That the prosecuting attorney made remarks highly prejudicial to the defendant in his closing argument.

Upon review, I am of the opinion that each of the contentions are without merit and that the motion for new trial should be denied.

It cannot be said that the verdict was against the evidence, the weight of the evidence or the law. The Government established that the two money orders in question originally were part of a

large number of money orders stolen in blank from a pharmacy along with a checkwriting machine, the function of which was to complete the monetary amount on the money order and imprint the same with a number distinctive to the agency issuing the money order. Two of these money orders were shown to have been completed and cashed by one Andrew Kisner, representing himself to be one Thomas Lloyd.

It was the testimony of one Donald Bradley, an automobile mechanic and salesman, that one George Cauley possessed a number of money orders in blank and sought Bradley's help in cashing them; that, at the instance of Bradley, Cauley and Bradley met with the defendant for this purpose; and that it was agreed the defendant would be responsible for finding various persons who would cash the money orders. It was the further testimony of Bradley that money orders were given to the defendant after Cauley first imprinted them with a checkwriting machine. Marlene Brown, who worked for a short time as a cook at the Vann Hotel, testified that the defendant gave her a number of money orders for safekeeping and that she kept them for some time, used one and returned the rest. Andrew Kisner, admittedly a narcotic addict at the time of the offenses charged and who had been confined to prison for nine months prior to trial, testified that the defendant solicited him to cash the two money orders in question, that he was instructed to use the name of Thomas Lloyd as purchaser, that he cashed the money orders at the tavern of one Louis Shiring and that he received forty dollars for his efforts and returned the balance to the defendant.

Defendant's case rested in part upon the testimony of Louis Shiring that, prior to cashing the money orders, he knew Andrew Kisner as Thomas Lloyd. This fact alone, if believed, could not pose a legally sufficient defense since, even if one uses his own signature in completing a stolen blank traveler's check, the instrument nevertheless becomes a forged security within the meaning of Section 2314. United States v. Franco, 413 F.2d 282 (5th Cir. 1969). The jury was so instructed. However, defense counsel contends that this testimony nevertheless weakened the Government's case since it contradicted Kisner's testimony that he had not used the name of Thomas Lloyd before. This conflict of evidence, however, is one which was solely within the province of the jury to resolve.

Defendant also proferred the testimony of Richard Vann, the owner of Vann's Hotel and Bar, to the effect that the defendant knew Cauley and Bradley were attempting to pass questionable money orders and warned him not to take them. This testimony was not per se contradictory to the Government's evidence. However, defendant sought to have the jury draw the inference therefrom that the defendant, although knowing what Bradley and Cauley were attempting to do, wanted to have no part in it. It was for the jury to decide whether to accept or reject such an inference.

Carole Jamerson, who was living with defendant at the time of the offense, testified that she was present at the meeting of Cauley and Bradley with defendant, that they sought to enlist the defendant in the enterprise in question but that defendant refused since he knew "Federal paper" was involved and customarily would not deal with such instruments. Here, again, the conflict between this testimony and that of Andrew Kisner was for the resolution of the jury.

It is apparent from the foregoing that there was conflicting evidence presented by the Government and the defendant. The Government's evidence, if believed, clearly was sufficient to sustain the jury's finding of guilt beyond a reasonable doubt.

It is defendant's contention that very little weight could be afforded to the testimony of Bradley, Kisner, and Brown since Bradley testified upon an understanding that he would not be prosecuted upon the money orders in question, Brown had pleaded guilty to an offense

involving similar money orders and had not yet been sentenced and Kisner had pleaded guilty to the offenses in question, also without having been sentenced at the time of defendant's trial. All of these facts were fully explored before the jury. The jury also was instructed both to evaluate the interest of any witness in the proceedings in considering the weight to be given to his testimony and to look with considerable care upon the testimony of admitted accomplices Bradley and Kisner.

 The Government's case was based largely upon the testimony of admitted accomplices and a person convicted of a related offense, all of whom might conceivably have stood to gain by their cooperation with the Government, and this warranted appropriate instructions to the jury. However, the potential interest of these witnesses does not destroy the weight or sufficiency of their testimony, once believed by the jury. Peel v. United States, 316 F.2d 907, 911 (5th Cir. 1963), cert. denied, Crane v. United States, 375 U.S. 896, 84 S.Ct. 174, 11 L.Ed.2d 125 (1963) and Zane v. United States, 375 U.S. 896, 84 S.Ct. 174, 11 L.Ed.2d 125 (1963). As stated in the *Peel* case, *supra*, 316 F.2d at page 911:

> "While this circumstance (the fact that the conviction was based upon the sole testimony of an admitted accomplice) leaves it open to the jury to view the testimony with skepticism, it does not destroy its weight or sufficiency once it is accepted as true by the jury. Once the trial court charged the jury adequately with respect to accomplice testimony, the jury could base its conviction entirely on the testimony of such accomplice." (Parenthetical supplied and citation omitted.)

Here, the Government offered the testimony of the admitted accomplices and another tangentially involved individual, each corroborative of the other. It cannot be said that a verdict based upon such testimony, once believed, was contrary to the weight of the evidence, the evidence or the law.

 It is next contended that the Court erred in permitting Robert L. Harman, a Special Agent of the Federal Bureau of Investigation, who later testified at trial, to remain at counsel table beside the prosecution during the selection of the jury. Apparently, it has been a customary practice both in this jurisdiction and in others for such a person to be permitted to remain at counsel table during the course of a criminal proceeding to assist counsel. Presumably, this is permitted as an accommodation to the Government, since the "case agent" of the Bureau is singularly familiar with the entire case of the prosecution.

No objection was made to Mr. Harman's presence at counsel table during the selection of the jury. Rather, during the selection of the jury, the Court on its own motion requested that Mr. Harman recede to the back of the courtroom where witnesses customarily remain until called to testify. The Court also asked the jurors whether they were familiar with Mr. Harman, much in the same manner that they were questioned as to any possible familiarity with the counsel in the case. I do not believe it is necessary to determine whether it was error, or even questionable practice, to permit Mr. Harman to remain at counsel table during a portion of the selection of the jury. Even assuming it to have been error, it was not of such character as to warrant a new trial. I conceive of no significant prejudice resulting to defendant from Mr. Harman's fleeting presence at counsel table before the commencement of the trial.

 Defendant's third contention is that the Court erroneously permitted the Government to introduce evidence of the general reputation of the defendant without the same having been placed in issue. Counsel has referred the Court to no specific testimony of this nature. A transcription of the testimony has not been requested, and the Court, therefore, relies upon its own recollection, notes of testimony at trial and certain excerpts read to the Court by the Court Reporter.

I find that the only testimony of this nature was elicited upon defense counsel's cross-examination of Andrew Kisner. When bid to explain why the defendant would seek to use another person to cash the money orders, "when he could obviously walk in and cash it himself," Kisner replied, "Knowing his reputation, I think it would be awfully hard for James Hamilton to walk in a bar and cash anything." This answer was relevant and responsive to the question. Defense counsel made no motion to strike it. Clearly, this testimony was not proffered by the prosecution in its case in chief. Defendant's third contention therefore is without merit.

Finally, defendant asserts that the prosecuting attorney made certain remarks highly prejudicial to the defendant in his closing argument. Defense counsel objected to two different comments made by the prosecuting attorney during the course of his closing argument. With respect to each, the question at hand is whether the remarks constituted fair comment on the evidence.

 The prosecuting attorney's comment which drew first objection was in relation to the testimony of Andrew Kisner, an admitted accomplice, and was as follows:

"What was his interest in coming down here and testifying before you? Perhaps, ladies and gentlemen, his interest might have been in seeing that a person like Jimmie Hamilton, who uses narcotic addicts, who capitalizes upon their weaknesses, their needs, their inability to cope with the realities of the world, perhaps his interest * * *" (Interrupted by objection of defense counsel.)

Counsel objected to this comment on the ground that there was no evidence supporting the proposition that the defendant "used" narcotic addicts and capitalized on their weaknesses. The Court responded by admonishing the prosecutor in the presence of the jury, "Alright, don't go very far with that, please."

Although the propriety of this comment is subject to question, I do not find

from the circumstances that a new trial is warranted by virtue of its having been made. Preliminarily, it may be noted that the Court curtailed the completion of this line of discussion and indicated to the jury a displeasure with the comment as thus having been stated. Defense counsel did not move to strike the comment nor did he move for the withdrawal of a juror, and this is some indication that he was then satisfied as to the corrective measures taken. Also, although no specific instruction to the jury was requested, the Court did instruct the jury generally that statements and arguments of counsel are not evidence in the case.

More to the merits of the comment itself, it is to be observed that the comment undoubtedly was prompted by, and made in rebuttal to, defense counsel's substantial attack upon the credibility of Andrew Kisner. Defense counsel challenged the motive of Kisner in testifying, suggesting that, having been convicted of the offenses in question but not yet sentenced, Kisner may well have regarded it to be in his best interest to cooperate with the Government. Defense counsel also took issue with the ability of Kisner, as a narcotic addict at the time of the offenses in question, to recollect correctly the events which had occurred. Clearly, the prosecutor's comment was intended both to meet the question of Kisner's narcotic addiction and to suggest possible alternative motives for Kisner's testimony. Moreover, and most importantly, while an exercise of hyperbole, the comment was not devoid of evidentiary support. Kisner testified that he had been a narcotic addict for some six years prior to the offenses in question, that on the day in question he "was on the way down" or in withdrawal, and that he told the defendant before being propositioned that he needed money because he needed drugs. Kisner also testified that, after he cashed the money orders, the defendant drove him to a place where he could obtain drugs. Insofar as the prosecutor's comment suggested that the defendant may have capitalized on Kisner's weakness as a narcotic addict, it

was fair comment on the evidence. Insofar as the comment may have suggested that defendant engaged in a practice of using narcotic addicts, I do not recollect evidence in support thereof. However, phrasing his comment as he did, the prosecutor acknowledged the conjectural aspect of his hypothesis, suggesting that "perhaps" Kisner's motive was other than that suggested by defense counsel. Considering all of the circumstances just related, it is my judgment that the comment, to an extent qualified by its own terms and thereafter limited by the Court, was not so prejudicial as to warrant a new trial.

■ The remaining comment to which defense counsel objected at sidebar was the prosecutor's final statement to the jury:

"Ladies and gentleman, I suggest to you, it is your duty, your unmistakable duty under the evidence presented in this case, unless you entirely disbelieve the testimony of Andrew Kisner and Donald Bradley and Marlene Brown, unless you entirely disbelieve their testimony, I submit it is your duty to return a verdict of guilty."

At the conclusion of this remark, defense counsel approached the bench and asked that the jury be instructed that the remark was improper. The Court denied this instruction but afforded defense counsel the opportunity to make a rebuttal to the jury. Defense counsel made such a rebuttal, challenging both this and the former comment of the prosecutor.

In challenging this latter comment, defense counsel relies upon the recent case of United States v. Schartner, 426 F.2d 470 (3d Cir. 1970). This reliance is misplaced. In *Schartner, supra*, the Court of Appeals enunciated the rule that " * * * although we cannot condone prosecutorial expression of personal belief in an accused's guilt, such expression is not reversible error when the remarks fairly construed refer only to belief based on the evidence and not to an opinion formed from facts not in evidence." 426 F.2d 477 (3d Cir. 1970).

Applying the aforequoted rule, the Court of Appeals found reversible error the following statement of the prosecutor:

"I say to you with all the sincerity I can muster that if you do not convict the defendant the guilty will escape."

In so deciding, the Court of Appeals noted that the comment not only was one of personal belief but also indicated reliance upon the prosecutor's experience and sincerity.

In the case at bar, the prosecutor's comment cannot be characterized as a statement of personal belief in the guilt of the accused. It is clear that the prosecutor bid the jury to reach a conclusion only upon facts in evidence and then only if they chose to believe the testimony offered by the Government. Moreover, it would appear that the comment was in essence quite correct, for, if the jury found the testimony of Kisner, Bradley and Brown truthful in material respects, they indeed would have had a duty to find the defendant guilty. I find no impropriety in the concluding remark of the prosecutor.

Based upon the foregoing, I conclude that the Motion for New Trial must be denied. An appropriate Order is entered.